## Cresson, Appellant, *v.* North American Co.

*Libel—Newspapers—Report of congressional committee—Privileged communication—Charge of crime.*

1. A newspaper may publish the substance or an abstract of the report of a committee of Congress appointed to investigate the action of officers of the United States Army and other persons accused of an offense against the government. The subject-matter of such a publication is of a privileged character.

2. If a newspaper makes such publication it is bound to see that the words selected, and the manner in which they are used, do not convey to the minds of ordinary readers a false impression or one calculated to make an officer's connection with the subject-matter of the publication more reprehensible than was contained in the committee's report.

3. In an action for libel against a newspaper for publishing an abstract of a congressional report, no recovery can be had where the publication merely stated that the committee charged certain persons, including plaintiff, with conspiracy in connection with the escape of a soldier from the army, while the general tenor of the

report as a whole showed that the committee considered plaintiff and other persons were engaged as members of one general conspiracy, from beginning to end, in promoting the escape.

Argued March 25, 1924. Appeal, No. 338, Jan. T., 1924, by plaintiff, from judgment of C. P. No. 5, Phila. Co., June T., 1922, No. 8608, on verdict for defendant, in case of Charles C. Cresson v. North American Company. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for libel. Before MONAGHAN, J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant. Plaintiff appealed.

*Error assigned* was, inter alia, directed verdict for defendant, quoting record.

*Joseph Neff Ewing,* of *Saul, Ewing, Remick & Saul,* with him *Francis H. Bohlen, Jr.,* for appellant.—Even the most adverse portions of the congressional investigating committee's report do not justify the publication of the article complained of: Montgomery v. Printing Co., 229 Pa. 165.

*James Gay Gordon,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 28, 1924:

Plaintiff sued to recover damages for an alleged libelous article published by defendant in its newspaper, printed in the City of Philadelphia, purporting to be a summary of a report of a committee appointed by Congress to investigate and fix responsibility for the escape of Grover C. Bergdoll, who had been convicted of evading the United States draft laws. The court below directed a verdict for defendant and assigned as reason therefor that the publication was substantially a correct and true

statement of the legislative committee's report. Plaintiff appealed.

Bergdoll had been convicted and confined in the army disciplinary barracks at Governor's Island, New York. He was released on an order from Washington and sent, under guard, to search for gold he claimed to have buried in the mountains of Maryland in anticipation of his arrest. While being taken to the place designated by those having him in custody, he was permitted to visit his home in Philadelphia and from there escaped from his guards. Subsequently, Col. Hunt, the commandant of the disciplinary barracks, was placed on trial before a military board charged with negligence in failing to properly guard Bergdoll. Plaintiff, a lieutenant colonel in the United States Army, who had been a practicing attorney previous to his enlistment, was appointed to act as prosecuting officer before the board on behalf of the government. Hunt was acquitted and, as a result, there was such general public criticism of the entire affair that a congressional committee was appointed "to investigate and procure all facts relevant to fixing responsibility for said escape and for failure to recapture the said Bergdoll, and particularly to determine whether relatives, friends, counsel, or attorneys of the said Bergdoll participated in a plot or conspiracy to effect or give aid to said escape......or whether officers.....or privates of the army or other persons connected with the army,......or any other persons participated in a plot or conspiracy to effect or give aid to said escape or to prevent recapture or were derelict in the performance of any duty devolved or devolving upon them which contributed to making said escape possible or prevented or hindered recapture or made it more easy for the said Bergdoll to elude recapture." This committee, after hearing the testimony of numerous witnesses, filed two reports, one by a majority of three members and the other by the remaining two. It was in connection with printing the substance of the majority

report, received through the Associated Press, that defendant published the following reference to plaintiff: "Samuel Tilden Ansell, former acting judge advocate general of the army and of the prisoner's legal counsel, Colonel John E. Hunt and Colonel Charles C. Cresson were charged with conspiracy in connection with the escape of Grover Cleveland Bergdoll, draft evader, in a report signed by three of the five members of a special investigating committee, filed to-day with the house." No reference to Cresson was made by the minority. Immediately after the published article quoted above, the following appears: "Denial by Cresson. Omaha, Neb., Aug. 18.—Colonel C. C. Cresson, of Fort Cook, Neb., who prosecuted Grover Cleveland Bergdoll, draft evader, commenting to-day on a report from Washington that he had been charged with conspiracy in connection with Bergdoll's escape, said that he knew nothing of the escape until after Bergdoll had got away."

The question here is not whether plaintiff was guilty or innocent of the charge of conspiracy but whether the statement published by defendant fairly set forth the contents of the majority report of the committee appointed by Congress to investigate the matter. The subject-matter of the publication was clearly of a privileged character. It concerned the report of a committee appointed by Congress to investigate the actions of officers of the United States Army and other persons accused of an offense against the government: 25 Cyc. 410. So long as defendant's published comments amounted to a fair and unprejudiced statement of the substance of the report of the committee they were privileged. "Ordinarily, the publication of pertinent statements made in the course of judicial and legislative proceedings is absolutely privileged; but even as to them, this quality may be lost if the published account be exaggerated": Montgomery v. New Era Printing Co., 229 Pa. 165, 167. Although it would have been more prudent had defendant published extracts from the report, using the exact

words of the committee, it was not required to do so but privileged if it saw fit to publish the substance or an abstract; in doing so, however, it was obliged to see that the publication was an accurate, truthful and impartial report of the matter: Good v. Grit Pub. Co., 36 Pa. Superior Ct. 238, 254. It was bound to see that the words selected and the manner in which used did not convey to the minds of ordinary readers a false impression or one calculated to make plaintiff's connection with the subject-matter of the publication more reprehensible than was contained in the committee's report: Good v. Grit Pub. Co., supra.

Viewed in the light of the foregoing general principles, the publication made by defendant cannot be said to be more condemnatory of plaintiff's actions than the report submitted by the committee itself? In the course of the committee's discussion of the facts disclosed by the investigation we find this language used in the majority report:

"In the natural sequence of things the conduct of O'Hare should next be considered; but, as the conduct and trial of Col. Hunt are in such close intimacy with Col. C. C. Cresson, the judge advocate who prosecuted—or rather who was selected or detailed to prosecute Col. Hunt—it is deemed best that his acts and omissions should be considered at this point in the report.

"As ugly as are many phases of this whole matter, none is more defenseless than the conduct of Col. Cresson in his pretended prosecution of Col. Hunt.

"To turn those loose who turned Bergdoll loose but adds insult to injury, and Col. Cresson was the principal one of the instruments through which this latter offense was perpetrated."

The committee proceeds to discuss charges brought against Col. Hunt and sets forth in detail the evidence produced at the trial and further commented as follows:

"Even before any testimony was introduced, Col. Cresson made the following statement to the court: 'The government disclaims, and personally and on behalf of the prosecution, any idea of their being anything crooked or any collusion on the part of Col. Hunt in this matter, or that any money was used, the only charge in the matter being simply neglect of duty and failure to take due precautions in the matter.'

"By that declaration Col. Cresson gave notice that he would not, if he could, prove that he [Hunt] did not furnish a sufficient guard if he was bribed not to do so.

"In the same way this prosecuting attorney served notice that he would not prove, even if he could do so, that Col. Hunt had failed to send a commissioned officer along with the guard if he had been paid not to do so.

"The inevitable conclusion is that Bergdoll bought his way out; yet Col. Cresson, the prosecutor, boldly announced that he would not prove that to be the case if he could.

"That statement by Col. Cresson clearly shows what a shocking mockery the rest of the trial was."

The report continued, to refer to the conduct and language of Col. Cresson during the course of the trial, quoting from various parts of his speech, in which he repeatedly stated his belief that Col. Hunt was not guilty of conspiracy or collusion in aiding Bergdoll to escape and said further: "While there are many who participated in the conspiracy leading to Bergdoll's escape and the acquittal of those who brought it about, there are three who are infinitely more culpable than the rest. These three are Gen. Ansell, Col. Hunt and Col. C. C. Cresson. But thus far no punishment has been imposed upon anybody that could not be discharged by the Bergdoll millions, and counted a mere trifle."

It is apparent from the general tenor of the report as a whole that the committee considered all who took part in effecting either the escape of Bergdoll or the freedom from punishment of those who participated therein, as

members of one general conspiracy and that they believed the entire matter had been planned from the original conception of the idea of a trip to search for a "pot of gold" to the means adopted to shield those who were involved in the affair. The account published by defendant goes no further than the report. It merely states the committee charged certain persons, including plaintiff, with conspiracy in connection with the escape of Bergdoll. The publication, therefore, fairly and accurately states the substance of the report; consequently the action taken by the court below was not error.

We call attention to the following cases in other jurisdictions where suit was brought by plaintiff against other defendants based on the publication of the substance of the committee's report; in each of these cases the same conclusion was reached: Cresson v. Wortham-Carter Pub. Co., 248 S. W. 1077; Cresson v. Louisville Courier Journal, U. S. Dist. Rep. Western Dist. of Ky., February, 1923; Cresson v. Dispatch Printing Co., 291 Fed. 632.

The judgment of the court below is affirmed.