## CRESSON v. LOUISVILLE COURIER-JOURNAL.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1924.)

No. 3918.

**Libel and slander ⬤⟳42(2)—Published account of the report of a majority of a congressional committee held privileged.**

An account published by defendant in its newspaper, stating that the report of a majority of ·a committee of Congress charged that Bergdoll, draft dodger, was aided in his escape to Germany by a conspiracy in which plaintiff and others named played the leading parts, *held* to fairly and accurately state the substance of the report, and in the absence of actual malice to be privileged, and not actionable.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action at law by Charles C. Cresson against the Louisville Courier-Journal. Judgment for defendant, and plaintiff brings error. Affirmed.

Wm. Marshall Bullitt and John E. Tarrant, both of Louisville, Ky. (Leo T. Wolford, of Louisville, Ky., on the brief), for plaintiff in error.

Geo. Cary Tabb, of Louisville, Ky. (Peter, Lee, Tabb & Krieger, of Louisville, Ky., on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. This is an appeal by the plaintiff, Charles C. Cresson, from a directed verdict in favor of the defendant in a libel suit. The libel is based on matter (reproduced in footnote 1), published by the defendant's newspaper, purporting to be an account of the majority report of the committee appointed by Congress to investigate the escape of Grover Cleveland Bergdoll, a draft evader. The defense is that the matter complained of is privileged in that it is a publication made in good faith and without malice, of a fair, impartial and correct report of a document issued by a committee of the House of Representatives of the United States Congress. The defendant also points out in its pleading that it published in the same newspaper article, following in close juxtaposition to the article complained of, the following:

[1] Calls Ansell Plot Pilot to Aid Bergdoll.

Majority House Report Says He Was "Master Mind" and Urges Disbarment.

Victory for Johnson.

Hunt and Cresson Also Listed as Conspirators; Campbell is Held Blameless.

Special to The Courier-Journal.

Washington, Aug. 18.—Charges that Grover C. Bergdoll, millionaire draft dodger, was aided in his escape to Germany by a conspiracy in which Gen. Samuel T. Ansell, Col. John E. Hunt and Col. C. C. Cresson played the leading parts, were made today in a sensational report of a majority of the Bergdoll investigating committee to the House.

The report was signed by three members of the committee, Representatives Ben Johnson, Kentucky, Democrat; Henry D. Flood, Virginia, Democrat; and Oscar Luhring, Indiana, Republican.

"Colonel Hunt was commandant at Governor's Island, where Bergdoll was imprisoned prior to his escape. Colonel Cresson was the officer who prosecuted Colonel Hunt in the court-martial proceedings following Bergdoll's escape.

" 'While there are many who participated in the conspiracy leading to Bergdoll's escape and the acquittal of those who brought it about, there are three who are infinitely more culpable than the rest. Those three are General Ansell, Colonel Hunt and Colonel C. C. Cresson' the majority declared."

Plaintiff contends that, on a sound interpretation, the congressional report does not charge him with participation in a conspiracy to aid Bergdoll in his escape to Germany, but only with a failure properly to prosecute Colonel Hunt, one of the defendants charged before a court-martial with neglect of duty resulting in Bergdoll's escape, and that defendant's publication, in reporting that he was charged with participation in such conspiracy, failed to give an accurate or even fair report of the document.

There is abundant evidence in the record that Colonel Cresson was very zealous, if not overzealous, in pursuing the prosecution, in and out of the Army, of those concerned in Bergdoll's escape. But the truth or falsity, the justice or injustice of the committee's report, in so far as it relates to Colonel Cresson, is not a matter for judicial review; in any event it is not the question before us. The members of the Congressional committee are absolutely privileged, and while this court differs with the committee's conclusions on the facts recited in its report —and doubtless there are no others else they would have been stated— nevertheless we have no authority in this action to review or revise those findings. Whether or not the time has come when a sound public policy may be deemed to require some limitation of the absolute privilege, is a matter for legislative and not for judicial consideration.

The sole question before us, therefore, is whether, in the absence of any evidence of express malice on defendant's part, it so clearly appears that its article was a fair and impartial account of the Congressional report as to leave no question for submission to the jury.

A careful reading and analysis of defendant's alleged libel indicate that the exact nature of the conspiracy in which plaintiff, with Hunt and Ansell, is alleged to have played a leading part, and his exact part therein, are not stated; the published article does not allege that they conspired to aid Bergdoll in his escape; it charges only that "Bergdoll was aided in his escape to Germany by a conspiracy in which" they played the leading parts. A single conspiracy is thereby stated to have been charged in the congressional report, but its scope is not fixed. It might have been limited to effectuating the escape; it might, however, equally well have been very much broader, including as separate steps therein the actual escape and the protection against punishment of those participating therein. If, therefore, the committee's report charged a single conspiracy consisting of a number of successive steps, one of which was directly to aid Bergdoll's escape, and another the failure diligently to prosecute those charged with dereliction of duty in that respect, and if it further charged Cresson with having played a leading part in any of the stages of the single conspiracy, it necessarily charged him with participation in the single conspiracy, and the directed verdict was in that case proper.

An examination of the resolution under which the committee acted, reproduced on the first page of the report, and of the other portions of the report relevant to this inquiry,[2] demonstrates that such was the conspiracy and participation charged therein. As the entire report is a part of the pleadings, all portions thereof may be considered even though the trial court permitted only certain parts to be read to the jury. It appears therefrom that the committee was appointed because of a charge that there had been a plot or conspiracy, and was to investigate the persons who "participated in a plot or con-

[2] Page 1 of Report.

Whereas, one Grover Cleveland Bergdoll, recently convicted * * * as a draft deserter ☆ ☆ ☆ has escaped from confinement; and

Whereas, charges are made, and there is reason to believe, that a plot and conspiracy existed among and between divers and sundry persons unknown to consummate the escape of the said Bergdoll from confinement: * * *

Resolved, that a select committee ☆ ☆ ☆ be appointed to investigate and procure all facts relevant to fixing responsibility for said escape and for the failure to recapture the said Bergdoll, and particularly to determine whether relatives, friends, counsel, or attorneys of the said Bergdoll participated in a plot or conspiracy to effect or give aid to said escape or to prevent recapture; or whether officers, noncommissioned officers, or privates of the army or other persons connected with the army or with the administration of the said disciplinary barracks or any other person participated in a plot or conspiracy to effect or give aid to said escape or to prevent recapture or were derelict in the performance of any duty devolved or devolving upon them which contributed to making said escape possible or prevented or hindered recapture or made it more easy for the said Bergdoll to elude recapture.

☆      *      *      *      *      *      *      *      *      *

### Page 22 of Report.

As the conduct and trial of Col. Hunt are in such close intimacy with Col. C. C. Cresson, the judge advocate who prosecuted—or rather who was selected or detailed to prosecute Col. Hunt—it is deemed best that his acts and omissions should be considered at this point in the report.

As ugly as are many phases of this whole matter, none is more defenseless than the conduct of Col. Cresson in his pretended prosecution of Col. Hunt.

To turn those loose who turned Bergdoll loose but adds insult to injury, and Col. Cresson was the principal one of the instruments through which this latter offense was perpetrated.

☆      *      ☆      *      *      *      *      *      *      *

### Page 25 of Report.

Lieut. Col. C. C. Cresson, as said, was the judge advocate detailed to prosecute Col. Hunt in the court-martial trial.

Even before any testimony was introduced, Col. Cresson made the following statement to the court:

"The government disclaims, and personally and on behalf of the prosecution, any idea of there being anything crooked or any collusion on the part of Col. Hunt in this matter, or that any money was used, the only charge in the matter being simply neglect of duty and failure to take due precautions in the matter. (P. 7, Hunt's court-martial trial record.)"

By that declaration Col. Cresson gave notice that he would not, if he could, prove that he did not furnish a sufficient guard if he was bribed not to do so.

In the same way this prosecuting attorney served notice that he would not prove, even if he could do so, that Col. Hunt had failed to send a commissioned officer along with the guard if he had been paid not to do so.

The inevitable conclusion is that Bergdoll bought his way out; yet Col.

spiracy to effect or to give aid to said escape or to prevent recapture or were derelict in the performance of any duty devolved or devolving upon them which contributed to making said escape possible, or prevented or hindered recapture or made it more easy for said Bergdoll to elude recapture."

But a single plot or conspiracy is thus referred to, and the committee adopted this view when it reported that "while there are many who

Cresson, the prosecutor, boldly announced that he would not prove that to be the case even if he could.

That statement by Col. Cresson clearly shows what a shocking mockery the rest of the trial was.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### Page 27 of Report.

Again, to show that Col. Cresson, conducting the prosecution, was doing both big and little things to avoid the conviction of Col. Hunt.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### Page 33 of Report.

While there are many who participated in the conspiracy leading to Bergdoll's escape and the acquittal of those who brought it about, there are three who are infinitely more culpable than the rest. Those three are Gen. Ansell, Col. Hunt and Col. C. C. Cresson. But thus far no punishment has been imposed upon anybody that could not be discharged by the Bergdoll millions, and counted a mere trifle.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### Pages 36 and 37 of Report.

At first only long and meagerly defined shadows, reaching from the "cause," were cast across the Nation's integrity. \* \* \*

But with the advent into the case of him who, by his partner, has been modestly declared to be "the highest authority in this country on military law," we find sorcerer like deception practiced upon the trusting. Next, we see a palsied old man, \* \* \* placed and replaced in artist-like fashion, wherever his name could best be commercialized.

Then we find the activities transferred from Washington \* \* \* to Governor's Island. \* \* \*

Then we find Bergdoll put into the same cell with a prisoner who is permitted to make almost daily visits to New York. \* \* \*

Next, we see the commandant of the prison turn deaf, dumb, and blind to every direction that might hinder Bergdoll's escape. \* \* \* Finally, and as a fitting sequel to this sordid tale, we find that the derelict commandant at Governor's Island was prosecuted by one whose shame should be measured only by his days. \* \* \*

Bergdoll escaped through the misdoing of somebody other than the Bergdoll family and their immediate, personal associates such as Romig, Stecker, Gibboney, and Mrs. Bergdoll. It is hoped that this report bares to the Congress the others who are more guilty than even the Bergdoll family. Shall they go unwhipped of justice?

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### Page 35 of Report.

When two or more persons pursue by their acts the same object, often by the same means, one performing one part of the act and the other another part of the act, so as to complete it, with a view to the attaining of the object which they were pursuing, this will be sufficient to constitute a conspiracy. \* \* \* Previous acquaintance is unnecessary, and it is not essential that each conspirator should know the exact part to be performed by the other conspirator in execution of the conspiracy. Moreover, all the con-

participated in the conspiracy leading to Bergdoll's escape and the acquittal of those who brought it about," the three who were infinitely more culpable than the rest were General Ansell, Colonel Hunt and Colonel Cresson; that "as ugly as are many phases of this whole matter, none is more defenseless than the conduct of Colonel Cresson in his pretended prosecution of Colonel Hunt"; "that to turn those loose who turned Bergdoll loose but adds insult to injury, and Colonel Cresson was the principal one of the instruments through which this latter offense was perpetrated." The committee further points out that to constitute a conspiracy it is not necessary for the parties to meet together or to enter into a formal agreement or even to have any previous acquaintance or to know the exact part to be performed by each, but any one who, with the knowledge of the facts, concurs in the plans of the original conspirators and comes in to aid their execution, is a co-conspirator.

We cannot avoid the conclusion that the committee charged that there was a single plot and that it comprised plans both for Bergdoll's escape and for the acquittal of those aiding therein. While Cresson's name is omitted from some paragraphs and sentences dealing with those directly aiding the escape, we do not believe such omission sufficient to indicate that the committee did not intend, as would otherwise appear, to charge Colonel Cresson with being a party to the plot as a whole. Inasmuch as we find that defendant has accurately summarized the committee's report, it is unnecessary to consider whether or not or under what circumstances of ambiguity, either of language or of legal construction, a newspaper must, at its peril, correctly determine the exact charge made before it is privileged to publish an honest and otherwise fair summary of a legislative committee report.

Again repeating that we are not passing upon the truth or fairness of the charges but only upon the question of the accuracy of the defendant's summary of the report, we hold that there was no error in directing a verdict for defendant. Our conclusions are supported by Cresson v. North American Co. (Pa.) 124 Atl. 495, Cresson v. Wortham-Carter Co. (Tex. Civ. App.) 248 S. W. 1077, and Cresson v. Dispatch Printing Co. (D. C.) 291 Fed. 632, involving virtually the same facts as the instant case.

Judgment affirmed.

spirators need not enter into the agreement at the same time. When a new party with knowledge of the facts concurs in the plans of the original conspirators, and comes in to aid in the execution of them, he is from that moment a co-conspirator.

\* \* \* \* \* \* \* \* \* \*

It must be conceded that the motives which prompted Mrs. Bergdoll, the mother, and "Judge" Romig, the foster father, to take part in the conspiracy were not the motives that actuated either Gibboney, Ansell, Bailey or Hunt. These latter had no affection for Grover Bergdoll, nor can it be said that his plight aroused their humanitarian impulses. What then incited their activities? There was, of course, the Bergdoll fortune ever present.