457 A.2d 108

**John RYBAS, Appellant**

v.

**Morton B. WAPNER, Esquire and Shelly's Forman, Individually and T/A Shelly's Pharmacy and Spawd, Ind.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1982.

Filed Feb. 18, 1983.

52

Paul Benjamin, Philadelphia, submitted a brief on behalf of appellant.

Steven G. Wigrizer, Philadelphia, for appellees.

Before WIEAND, BECK and MONTEMURO, JJ.

BECK, Judge:

This defamation action was initiated by appellant John Rybas against appellees Morton B. Wapner, Esquire, and his client, Shelly Forman, a pharmacist. The trial court granted appellees' motion for summary judgment and this appeal followed.

Rybas is engaged in several businesses run by himself and his three sons in the Far Northeast section of Philadelphia, where his family have been long-time residents. Forman's drug store, known as Shelly's Pharmacy, has been located since 1970 in space leased by Rybas in a shopping center which Rybas built. Forman, too, lives in the Far Northeast.

In 1977, Rybas and Forman were in the midst of two separate lawsuits arising out of their landlord-tenant relationship. During the settlement negotiations, on December 12, 1977, Benjamin Paul, Rybas' attorney, wrote a letter to Wapner, Forman's attorney, asking for certain financial statements and tax returns. On December 16, 1977, Wap-

ner responded to Paul. His letter contained the following paragraph:

"If Mr. Rybas ever intends to settle this amicably, it is going to be incumbent upon him to make some gesture of good faith, some attempt to demonstrate that he is not as an anti-Semitic as he appears to be, and to make some effort at trying to live together as a good neighbor."

Following receipt of Wapner's letter, Rybas filed suit, claiming that the letter was defamatory and demanding judgment in excess of $100,000. Wapner denies that the letter was defamatory, and claims that Rybas fails to prove damages. He does not plead truth as a defense, but claims that the statement in question is absolutely privileged as relating to a judicial proceeding.

In reviewing summary judgment, the Court must accept as true all well-pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. *Scheetz v. Borough of Lansdale*, 64 Pa.Commw. 24, 438 A.2d 1048 (1982). Clearly there is no genuine issue of material fact in this case. Our review is therefore limited to the issues of (1) whether Wapner's letter was defamatory, and actionable without proof of damages, and (2) whether the statement was privileged as a communication between attorneys.

In Pennsylvania law, a communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971). Procedurally, it is the function of the court in the first instance to determine whether the communication complained of is capable of a defamatory meaning. The test is the effect the statement would fairly produce, or the impression it would naturally engender, "in the minds of

the average persons among whom it is intended to circulate." *Corabi, supra,* 441 Pa. at 447, 273 A.2d at 907, quoting *Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936).

 The trial court concluded that Wapner's statement could not, as a matter of law, have a defamatory meaning, and we reach the same conclusion. Therefore, the sentence in the letter complained of is not actionable under Pennsylvania law. We find *Raible v. Newsweek, Inc.,* 341 F.Supp. 804 (W.D.Pa., 1972) persuasive. In that case, an action in defamation based on an accusation of racial prejudice was dismissed by the court because the sum total of the words complained of was tantamount to describing the plaintiff as a "bigot." We are persuaded that the *Raible* court was correct in asserting "to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no rise to an action for libel" (at 807).

 *Raible* relied on *McAndrew v. Scranton Republican Publishing Co.,* 364 Pa. 504, 72 A.2d 780 (1950) and *Sweeney v. Philadelphia Record Co.,* 126 F.2d 53 (3rd Cir.1942) along with a related action, *Sweeney v. Beacon Journal Publishing Co.,* 66 Ohio App. 475, 35 N.E.2d 471 (1941). The thrust of *McAndrew* and *Sweeney* is that not every embarassing and annoying publication is a libel. A publication which charges that an individual is actuated by unpleasant or undesirable prejudice may offend his sensitivities, but is not thereby libelous.

 We note that to restrict too severely the right to express such opinions, no matter how annoying or disagreeable, would be dangerous curtailment of a First Amendment Right. Individuals should be able to express their views about the prejudices of others without the chilling effect of a possible lawsuit in defamation resulting from their words. We thus affirm the fundamental right to express views about the character of other people except where that express will "so ... harm the reputation of

56

another as to lower him in the estimation of the community or ... deter third persons from associating or dealing with him." *Corabi, supra,* 441 Pa. at 477, 273 A.2d at 907.

 Essential to the very idea of defamation is injury to "reputation" in the popular sense. The damage is judged by the reaction of other persons in the community, and not by the party's self-estimation. In this respect the law recognizes that every man has a right to have his good name unaffected by false statements which lower him in the estimation of the community or deter third persons from dealing with him, but the law does not protect a person from hurt feelings or individual negative reactions to a particular statement.[1]

We hold that Wapner's statement to the effect that Rybas should make some attempt to demonstrate "that he is not as antisemitic as he appears to be" is not capable of defamatory meaning. To reach this conclusion, the reviewing Court must examine the words in their factual context. Wapner's alleged defamation was written in a letter to a fellow attorney and was intended for no other audience. The intended publication was therefore extremely limited. In *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980) our Court held that factual context included the nature of the intended audience as a "critical factor" in determining whether a statement was capable of defamatory meaning. In that case, the alleged defamation was an evaluation of an academic performance, intended for communication to only a few members of the university community. We found that while negative evaluation of an academic performance might be embarassing or annoying, it did not lead the community to ostracize or shun the plaintiff.

 The law is clear that the nature of the intended audience must be evaluated, and "the test is the effect the statement is fairly calculated to produce ... in the minds of

1. Prosser, *Law of Torts,* 4th ed. (1971) § 111; Eldredge, *The Law of Defamation,* (1978) §§ 4, 35; *Restatement, 2d, Torts,* § 559.

the average persons among whom it is intended to circulate." *Corabi, supra,* 441 Pa. at 447, 273 A.2d at 907. We need not speculate whether Wapner's alleged libel would be capable of a defamatory meaning if it appeared in some other context. We face a fact pattern far different from the principal case which Rybas cites, *O'Donnell v. Philadelphia Record Co.,* 356 Pa. 307, 51 A.2d 775 (1947). In that case, the following statement in an editorial was held libelous:

"John O'Donnell is a Naziphile. He makes no secret of it. On numerous occasions, to all friends and barflies within hearing, he has broadcast his sympathy with most of Hitler's aims—such as destruction of the British Empire, suppression of labor unions and liquidation of the Jews." (356 Pa. at 309, 51 A.2d 775).

Clearly, the 1977 statement of Wapner, in a letter intended only for Rybas' attorney and read only by appellant's family and three close business and professional associates, in no way approaches the large public audience of the statement in the *Record* editorial. We also take judicial notice of the fact that the defamation in *O'Donnell* was originally published at a time when the United States was on the brink of war with Nazi Germany, and republished in August 1942, after the outbreak of hostilities. We further distinguish this characterization of Rybas from calling someone a member of the Communist party, held defamatory in *Solosko v. Paxton,* 383 Pa. 419, 119 A.2d 230 (1956) and *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952) at a time when membership in the Communist Party was a felony.

Since we find as a matter of law that Wapner's statement was not capable of defamatory meaning, we do not reach the question of whether Rybas was required to prove damages therefrom. We also find it unnecessary to decide whether the letter in question was privileged as part of a communication between attorneys pursuant to a legal settlement.

58

We affirm the lower court's order granting summary judgment.