484 A.2d 72

**Ronald R. RUTT, Sr., (Appellant at No. 671)**

**v.**

**BETHLEHEMS' GLOBE PUBLISHING CO., John Strohmeyer and James B. Gaffney (Appellants at No. 1256).**

Superior Court of Pennsylvania.

Argued Dec. 9, 1981.

Filed April 6, 1984.

Petition for Allowance of Appeal Granted Aug. 9, 1984.

166

Robert C. Brown, Jr., Easton, George K. Keenan, Bethlehem, for appellant (at No. 671) and for appellee (at No. 1256).

J. Stephen Kreglow, Easton, for appellants (at No. 1256) and for appellees (at No. 671).

Before CAVANAUGH, McEWEN and BECK, JJ.

McEWEN, Judge:

Presently before this Court are the consolidated appeals from the disposition of cross-motions for summary judgment filed by the parties to a libel action. The trial court granted the motion for partial summary judgment filed by Ronald R. Rutt, Sr., hereinafter appellant, after concluding as a matter of law that (1) the article at issue was capable of defamatory meaning, and (2) that appellant was a private figure plaintiff for purposes of the libel action. The motion of appellees, the Bethlehems' Globe Times, John Strohmeyer and James B. Gaffney, for partial summary judgment upon the issue of the burden of proof of a private figure plaintiff in a defamation suit against a media defendant was also granted, the court holding that Pennsylvania law required a private figure plaintiff to establish that the defamatory matter was published with actual malice, as that term is defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

We conclude that the distinguished Judge Richard D. Grifo properly determined the article to be capable of defamatory meaning and properly held that appellant was a private figure plaintiff. We are constrained, however, to reverse the entry of partial summary judgment on the issue of the burden of proof of a private figure plaintiff in a libel action.

## I. *Factual Background*

Appellant, Ronald R. Rutt, Sr., commenced a defamation action to recover damages for the publication of an allegedly libelous article in the Bethlehems' Globe Times issue of August 29, 1977. The Bethlehems' Globe Publishing Co., John Strohmeyer, Editor, and James B. Gaffney, News Editor of the Globe Times, were named as defendants. The challenged article is an extended obituary relating to the death of Randy Lee Rutt, the son of appellant, who died as a result of a self-inflicted gunshot wound on August 28, 1977. The text of the article is set forth as follows:

## GLOBE–TIMES
### August 29, 1977

Randy Rutt, 20,
Served in Marines

A 20-year-old veteran of the U.S. Marines who served in the Mediterranean during the Lebanon crisis, was dead on arrival Saturday night at St. Luke's Hospital.

City police said Randy Lee Rutt apparently shot himself to death with a rifle belonging to his father at the home of Mr. and Mrs. Joseph Hegedus, 255 E. North St., a couple days after the victim's father asked him to leave his home at 804 Linden St.

Earlier this month the younger Rutt was discharged from military service, police said.

When police arrived at the Hegedus house about 7:20 p.m., the youth was found on the floor between the living room and dining room. Officers said he was still breathing when he was taken to the hospital.

Police said that a 14-year-old child in the Hegedus home told them that before the gun went off Rutt uttered that he had no friends and no one loved him.

Born in Bethlehem, he was a son of Ronald and Bernice Frey Rutt. His father is the owner of Ronn Studio & Color Laboratory, a former city policeman and was a Republican write-in candidate for mayor in the spring primary.

The victim was a member of Salem Lutheran Church.

Surviving, besides his parents, are three brothers, Ronald Jr. and Craig, at home, and Jeffrey of Bethlehem, and a paternal grandmother, Dorothy Stiles of Hellertown.

Services will be held at 2 p.m. Wednesday at the Connell Funeral Home, 245 E. Broad St. Burial will be in Memorial Park Cemetery.

Appellant alleged in his complaint that the following portion of the article contained false, malicious and defamatory matter concerning the plaintiff:

City police said Randy Lee Rutt apparently shot himself to death with a rifle belonging to his father at the home of Mr. & Mrs. Joseph Hegedus, 256 E. North St., a couple days after the victim's father asked him to leave his home at 804 Linden St.

Appellant further alleged that the article, as understood by many readers of the newspaper, related that the death of Randy Lee Rutt was a suicide caused by the lack of love or affection of appellant for his son and was a result of the action of appellant in asking his son to leave his home. Appellant averred, contrary to the article in the Globe Times: (1) that Randy Lee Rutt, following his discharge

from the United States Marines, returned to Bethlehem where he resided with his mother, separate and apart from appellant until the time of his death; (2) that Randy Lee Rutt was at all times following his return from the Marines on good and friendly terms with appellant; (3) that Randy Lee Rutt did not reside with appellant at 804 Linden Street at any time after his return from the service; and (4) that appellant did not ask his son to leave his home at 804 Linden Street. Appellant seeks to recover compensatory damages as a result of the publication of false and libelous statements in the article which, he alleges, resulted in his exposure to public hatred, contempt and ridicule and in the impairment of his reputation and standing in the community.

After the depositions of appellant and James Gaffney, the News Editor of the Globe Times, had been taken, counsel for appellant and counsel for appellees each presented oral motions for summary judgment to the trial judge at a pre-trial conference held on February 23, 1981. The hearing court granted the motion for summary judgment of plaintiff/appellant on the following issues: (1) that the article was capable of defamatory meaning; and (2) that the plaintiff was a private individual at the time the article was published, as opposed to a public figure, within the meaning of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The motion of appellees for summary judgment upon the issue of the burden of proof of a private figure plaintiff in a defamation suit against a news media defendant was granted and the court ruled that a private figure plaintiff in Pennsylvania must prove that the defamatory matter was published with actual malice as defined in *New York Times Co. v. Sullivan, supra*. Appellant subsequently filed an appeal to this Court challenging the application of the actual malice standard to a private figure plaintiff in a defamation action against a media defendant.[1] Appellees thereafter filed a

---

1. The order granting partial summary judgment on the issue of the burden of proof of a private figure plaintiff in a libel action was a final, appealable order in this case. Appellant had stipulated to his inability to establish malice on the

petition for permission to appeal the judgments rendered in favor of appellant on the related issues, which were deemed by the court in an amended order to contain controlling questions of law as to which there were substantial grounds for a difference of opinion in accordance with 42 Pa.C.S. § 702.[2]

## II. *Defamatory Character of the Article*

The plaintiff in an action for defamation has the burden of proving, under Pennsylvania law, the defamatory character of the communication, its publication by the defendant, and the understanding by the recipient of its applicability to the plaintiff as well as its defamatory meaning. Section 8343 of the Judicial Code, 42 Pa.C.S. § 8343, provides:

**§ 8343. Burden of proof**

(a) **Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

(b) **Burden of defendant.**—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

part of appellees and the order, therefore, put appellant "out of court". *See Praisner v. Stocker,* 313 Pa.Super. 332, 337, 459 A.2d 1255, 1258–1259 (1983).

**2.** The further issues presented for review by the amended order of court are: (1) whether the challenged article was capable of a defamatory meaning; and (2) whether the plaintiff was a public or private figure within the meaning of *Gertz v. Robert Welch, Inc., supra.*

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.[3]

It is the function of the trial court to determine, in the first instance, whether the communication complained of is capable of defamatory meaning. *Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 110 (1983); *Braig v. Field Communications*, 310 Pa.Super. 569, 574 n. 2, 456 A.2d 1366, 1369 n. 2 (1983). If the court determines that the communication is capable of a defamatory meaning, it then becomes the jury's function to decide whether it was so understood by those who read it. *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442, 273 A.2d 899, 904 (1971); *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 317–18, 182 A.2d 751, 753 (1962); *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 482, 448 A.2d 6, 10 (1982); *Brophy v. Philadelphia Newspapers, Inc.*, 281 Pa.Super. 588, 592, 422 A.2d 625, 628 (1980); *Vitteck v. Washington Broadcasting Co., Inc.*, 256 Pa.Super. 427, 430, 389 A.2d 1197, 1199 (1978). *See* Restatement (Second) Torts, Section 614. A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him. *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 270 (3rd Cir.1980); *Marcone v. Penthouse International, Ltd.*, 533 F.Supp. 353, 357 (E.D.Pa. 1982); *Corabi v. Curtis Publishing Co., supra* 441 Pa. at 442, 273 A.2d at 904; *Cosgrove Studio & Camera Shop, Inc. v. Pane, supra* 408 Pa. at 317–18, 182 A.2d at 753; *Rybas v. Wapner, supra*, 311 Pa.Super. at 54, 457 A.2d at 110. In determining whether the challenged communication is defamatory, the court must decide whether the communication complained of can fairly and reasonably be construed to have the libelous meaning ascribed to it by the complain-

3. Section 8343 of the Judicial Code, which became effective June 27, 1978, is a reenactment of the Act of August 21, 1953, P.L. 1291, § 1, 12 P.S. § 1584(a), which was a verbatim enactment of Section 613 of the Restatement of Torts. *See Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 449 n. 5, 273 A.2d 899, 908 n. 5 (1971).

ing party. *Corabi v. Curtis Publishing Co., supra; Bogash v. Elkins,* 405 Pa. 437, 176 A.2d 677 (1962); *Beckman v. Dunn,* 276 Pa.Super. 527, 533, 419 A.2d 583, 586 (1980); *Doman v. Rosner,* 246 Pa.Super. 616, 371 A.2d 1002 (1977). In making this determination upon the meaning of the article, it must be construed as a whole, *Corabi v. Curtis Publishing Co., supra* 441 Pa. at 444, 273 A.2d at 906; *Brophy v. Philadelphia Newspapers, Inc., supra* 281 Pa. at 594, 422 A.2d at 629; *Beckman v. Dunn, supra* 276 Pa.Super. at 533, 419 A.2d at 586, and each word must be read in the context of all the other words. *MacRae v. Afro-American Co.,* 172 F.Supp. 184, 186 (E.D.Pa.1959), *aff'd.,* 274 F.2d 287 (3rd Cir.1960).

> The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are likely to attribute to them.

*Corabi v. Curtis Publishing Co., supra* 441 Pa. at 447, 273 A.2d at 907, *quoting Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936); *Accord Rybas v. Wapner, supra* 311 Pa.Super. at 54, 457 A.2d at 110; *Brophy v. Philadelphia Newspapers, Inc., supra* 281 Pa. at 594, 422 A.2d at 629; *Beckman v. Dunn, supra* 276 Pa.Super. at 533, 419 A.2d at 586.

Appellant argues that the article is false and defamatory because the average reader of the Globe Times "would believe that appellant had caused or contributed to the suicide of his son for the reason that appellant did not love him and had asked him to leave his home a few days before the apparent suicide." (Brief of Appellant at p. 2). Appellant testified that he had not made such a request of his son and that his son did not reside with him at the 804 Linden St. address but had lived elsewhere with his mother.

The U.S. District Court for the Eastern District of Pennsylvania in *MacRae v. Afro-American Co., supra,* was faced with a defamation action arising from a factually

similar situation. The plaintiff mother of a deceased co-ed brought an action for defamation against a newspaper defendant for publication of an article which the court determined could fairly be read to mean that the plaintiff's daughter had possibly committed suicide and that plaintiff was at least partly responsible for her daughter's death. The article stated that the plaintiff's daughter had been found dead in her apartment in New York City where she was residing for the summer; that she was "believed to have been despondent over her mediocre marks" at college; that it was "rumored" that the young woman's mother was "extremely displeased over her daughter's scholastic standing"; and that it was "whispered" that the daughter "had been told not to come home unless she improved her grades." *Id.* at 18.

The language in the allegedly defamatory obituary in the instant case, just as in the news article in *MacRae,* can reasonably be construed to imply that appellant had in some way caused or contributed to the apparent suicide of his son by showing a lack of parental love and by asking him to leave the family home. The testimony of appellant at his deposition reveals in fact just such a public understanding as appellant stated that neighbors and acquaintances criticized him for what was perceived by them to be harshness and lack of parental love. The appearance of the language relating that the father had asked the boy to leave the home, in the same sentence as the information that "Rutt apparently shot himself to death *with a rifle belonging to his father*", provides support for the implication that plaintiff in some fashion caused or contributed to the death of his son. This defamatory implication was intensified in a subsequent sentence which stated that "[p]olice said that a 14 year old child in the Hegedus home told them that before the gun went off Rutt uttered that he had no friends and no one loved him." Thus, we conclude that the trial court properly granted summary judgment in favor of appellant upon the issue of whether the article was capable of a defamatory meaning. *See MacRae v. Afro-American Co.,*

*supra.* It is, therefore, for the jury to determine upon remand, " 'whether it was so understood by the recipient[s]. . . .' " *Doman v. Rosner, supra* 246 Pa.Super. at 622, 371 A.2d at 1005 *quoting Corabi v. Curtis Publishing Co., supra* 441 Pa. at 441, 273 A.2d at 904.

## III. *Status of Appellant*

Appellees challenge the finding of the trial court that appellant was a private figure plaintiff, and argue that at the time of the publication of the article at issue appellant was a public figure who was required to prove that appellees published the article with knowledge of its falsity or with reckless disregard as to its truth or falsity.

A determination of the status of appellant requires an examination of the developments in the law of defamation that have followed upon *New York Times Co. v. Sullivan, supra.* The Supreme Court therein established a constitutional privilege applicable to media defendants for the publication of defamatory falsehoods concerning *public officials.* This privilege operates to bar a public official from the recovery of damages for the publication of defamatory falsehoods unless the plaintiff proves by clear and convincing evidence that the defamatory publication was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* 376 U.S. at 279–280, 84 S.Ct. at 725–726, 11 L.Ed.2d 686.

"Three years later, the court extended the New York Times standard to 'public figures'. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)." *Wolston v. Reader's Digest Association,* 443 U.S. 157, 163–164, 99 S.Ct. 2701, 2705–2706, 61 L.Ed.2d 450 (1979). In *Curtis Publishing Co. v. Butts, supra* the Supreme Court expanded the constitutional privilege pronounced in the *Sullivan* decision so as to protect defamatory criticisms of persons who, although not public officials, "are nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large."

*Curtis Publishing Co. v. Butts, supra* 388 U.S. at 164, 87 S.Ct. at 1996, 18 L.Ed.2d 1094 (concurring opinion of Mr. Chief Justice Warren).

The Supreme Court further enlarged the scope of the *Sullivan* privilege in the plurality opinion of Mr. Justice Brennan in *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). Justice Brennan there opined that even a private individual plaintiff in a suit against a media defendant for publication of defamatory falsehood "relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 52, 91 S.Ct. at 1824, 29 L.Ed.2d 296 (footnote omitted). Thus, the Court stretched the "commitment to robust debate on public issues which is embodied in the First Amendment," to an ephemeral zenith "by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved [were] famous or anonymous." *Id.* at 43–44, 91 S.Ct. at 1819–1820, 29 L.Ed.2d 296 (footnote omitted). The Supreme Court soon retreated from the *Rosenbloom* decision after weighing in *Gertz v. Robert Welch, Inc., supra,* the competing policy concerns underlying the constitutional privilege established in *New York Times Co. v. Sullivan, supra.* The Supreme Court in *Gertz* balanced the interest of society in "uninhibited, robust and wide open" debate on public issues as well as "the need to avoid self-censorship by the news media" against the competing legitimate state interests in protecting the reputational interests of the individual. The Court resolved these "competing concerns" in favor of private individuals and held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz v.*

*Robert Welch, Inc., supra* 418 U.S. at 347, 94 S.Ct. at 3010, 41 L.Ed.2d 789 (footnote omitted).

The Court also made clear that the issue of whether appellant was a "public" or "private" figure at the time the allegedly defamatory article was published is a question of law for the court to determine in the first instance. *Wolston v. Reader's Digest Association, supra* at 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); *Gertz v. Robert Welch Inc., supra; Waldbaum v. Fairchild Publications, Inc.,* 201 U.S.App.D.C. 301, 627 F.2d 1287, *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). *See also Braig v. Field Communications, supra.*

The court in *Gertz* recognized two classifications of public figures:

> [The public figure] designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.
>
> \* \* \* \* \* \*
>
> Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

*Id.* 418 U.S. at 351–352, 94 S.Ct. at 3012–3013, 41 L.Ed.2d 789.

The Court recognized that an individual does not easily attain the status of an all purpose public figure. Rather, such a status is reserved to those individuals who have "assumed roles of especial prominence in the affairs of society" or "have attained positions of such persuasive power and influence that they are deemed public figures for all purposes." *Id.* at 345, 94 S.Ct. at 2997, 41 L.Ed.2d 789. *Accord Time, Inc. v. Firestone, supra* 424 U.S. at 453, 96 S.Ct. at 965, 47 L.Ed.2d 154.

## A. *All Purpose Public Figure.*

■ Appellees contend that appellant was, at the time of the publication of the article at issue, an all purpose public figure. Appellees cite numerous cases from other jurisdictions to support their argument that appellant's status as a police officer of the Bethlehem Police Department, prior to his resignation in March of 1977, caused him to attain the status of a public official. *Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); *Orr v. Lynch,* 411 N.Y.S.2d 10, 411 N.Y.S.2d 10, 383 N.E.2d 562 (1978); *La-Rocca v. New York News, Inc.,* 156 N.J.Super. 59, 383 A.2d 451 (1978); *Rawlins v. Hutchison Publishing Co.,* 218 Kan. 295, 543 P.2d 988 (1975); *Moriarty v. Lippe,* 162 Conn. 371, 294 A.2d 326 (1972). Appellees concede that Rutt's resignation from the police department on March 18, 1977, more than five months before the article in question was published, caused appellant to lose his status as a public official. However, they contend that appellant took the first step toward converting his status of public official to that of a public figure by seeking "public scrutiny of the reasons" for his resignation by requesting an interview with the appellee Globe Times. An article airing the views expressed by appellant and relating his reasons for resignation from the police force was published in the March 18, 1977 issue of the Globe Times.[4] Appellees contend that Rutt completed his transition from public official to public figure status by declaring his candidacy in the primary

4. *See* Appendix A for a full text of the article.

election for the office of Mayor of the City of Bethlehem on May 7, 1977, less than two months after he publicly announced his resignation from the police force. Appellees conclude, therefore, that appellant's declaration of candidacy for public office rendered him an "all purpose public figure" in accordance with the decision of the United States Supreme Court in *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971). We disagree since, as we will hereinafter discuss, appellant was not an all purpose public figure at the time of the publication of the article.

"Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc., supra* 418 U.S. at 352, 94 S.Ct. at 3013, 41 L.Ed.2d 789. *Accord: Wolston v. Reader's Digest Association*, 443 U.S. 157, 165, 99 S.Ct. 2701, 2706, 61 L.Ed.2d 450 (1979). "[A] person can be a general public figure only if he is a 'celebrity'—his name a 'household word'—whose ideas and actions the public in fact follows with great interest." *Waldbaum v. Fairchild Publications, Inc., supra* 201 U.S. App.D.C. at 306, 627 F.2d at 1292. No evidence was introduced which tended to suggest that appellant was an individual of general fame or notoriety in the community or that he was pervasively involved in or enjoyed especial prominence in the affairs of society. *Wolston v. Reader's Digest Association, supra* 443 U.S. at 165, 99 S.Ct. at 2706, 61 L.Ed.2d 450; *Time, Inc. v. Firestone, supra* 424 U.S. at 453–454, 96 S.Ct. at 965, 47 L.Ed.2d 154. Rather, the evidence presented by the parties discloses that appellant resigned from the Bethlehem police force on March 18, 1977, and sought press coverage of the reasons for his resignation. Appellant expressed as his reasons a sense of personal frustration due to lack of advancement on the force as well as general criticism of administration policy in the police department. Almost two months later, on May 7, 1977, appellant announced his write-in-candidacy on the Republican ticket for the mayoral primary election of May

17, 1977. An article appeared in the appellee Bethlehems' Globe Times on the date of appellant's announcement of his candidacy and reported upon an interview in which appellant discussed the general aspects of his platform. The article also related biographical information that included the fact that appellant had served as a city policeman from 1963 until "earlier this year." Just ten days after appellant declared his write-in-candidacy, he was defeated in the primary election on May 17, 1977. The public issues into which appellant had thrust himself were concluded totally, finally and rather quickly, namely, within sixty days. The article of which appellant complains did not appear until August 29, 1977, more than three months after his ten day candidacy and defeat in the primary election. There is no evidence that the public or the press followed the actions or ideas of appellant with any interest, report or comment. In fact, it would appear that by the time of publication of the challenged article, appellant had for all purposes disappeared from public view, an understandable result, as his only effort to influence matters of public importance had been notably unsuccessful as well as brief. Appellant, not having attained prominence in the affairs of society nor enjoying the status of a "celebrity", could not, as a matter of law, have been found to be an all purpose public figure.

B. *Limited Purpose Public Figure*

█ Having concluded that appellant was not a general purpose public figure, it remains for us to determine whether the trial judge properly held that he was also not a limited purpose public figure. An individual can become a public figure for a limited range of issues by voluntarily injecting himself or becoming drawn into a particular public controversy. *Wolston v. Reader's Digest Association, supra* 443 U.S. at 165, 99 S.Ct. at 2706, 61 L.Ed.2d 450; *Time, Inc. v. Firestone, supra* 424 U.S. at 453, 96 S.Ct. at 965, 47 L.Ed.2d 154; *Gertz v. Robert Welch Inc., supra* 418 U.S. at 351, 94 S.Ct. at 3013, 41 L.Ed.2d 789. "[A] person has become a public figure for limited purposes if he is attempt-

ing to have, or realistically can be expected to have, a major impact on the resolution of a specific public dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants. In undertaking this examination, a court must look through the eyes of a reasonable person at the facts taken as a whole." *Waldbaum v. Fairchild Publications, Inc., supra* 201 U.S.App.D.C. at 306, 627 F.2d at 1292. However, "a private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention. To accept such reasoning would in effect re-establish the doctrine advanced by the plurality in *Rosenbloom...* ." *Wolston v. Reader's Digest Association, supra* 443 U.S. at 167, 99 S.Ct. at 2707, 61 L.Ed.2d 450.

■ In determining whether a plaintiff in a defamation action has become a limited purpose public figure, a court should first "reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the *particular controversy giving rise to the defamation." Gertz v. Robert Welch, Inc., supra* 418 U.S. at 352, 94 S.Ct. at 3013, 41 L.Ed.2d 789 (emphasis added). We must, therefore, first define the public controversy which gave rise to the defamatory article at issue in order to determine whether appellant should be found, by virtue of the nature of his participation therein, to be a limited purpose public figure.

> A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way. The Supreme Court has made clear that essentially private concerns or disagreements do not become public controversies. To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the

public formulate some judgment. It should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution. If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy. *Waldbaum v. Fairchild Publications, Inc., supra* 201 U.S. App.D.C. at 310–311, 627 F.2d at 1296–1297 (citations and footnotes omitted). *See also Time, Inc. v. Firestone, supra* 418 U.S. at 454, 96 S.Ct. at 965, 47 L.Ed.2d 154.

Our review of these notions—which we here accept as principles for application to such issues—admits of no other interpretation but that the allegedly defamatory obituary, although containing a matter which appellees may have believed would tweak the prurient and morbid interest of certain members of the public, did not involve a matter of public controversy with foreseeable and substantial ramifications for the members of the general public.[5]

 Moreover, appellant in no way injected himself into the events which were the subject of the article at issue in an attempt to influence the resolution of any issues involved therein. *See Wolston v. Reader's Digest Association, supra* 443 U.S. at 168, 99 S.Ct. at 2707, 61 L.Ed.2d 450. *Time, Inc. v. Firestone, supra* 418 U.S. at 454, 96 S.Ct. at 965, 47 L.Ed.2d 154. We conclude, therefore, that appellant was not a limited purpose public figure as the defamatory article did not result from (1) his participation in any manner in (2) a particular public controversy. *See Marcone v. Penthouse International, Ltd.,* 533 F.Supp. 353, 359–360 (E.D.Pa. 1982).

## IV. *Plaintiff's Burden of Proof*

Having concluded that the hearing judge correctly held that the article at issue was capable of a defamatory meaning and that appellant was a private figure plaintiff, we now address the issue of the burden of proof of a

5. *See* Note, Public Figures, Private Figures and Public Interest, 30 Stan.L.Rev. 157 (1977).

private figure plaintiff in a defamation action against a media defendant. The Pennsylvania Supreme Court last addressed this issue in *Matus v. Triangle Publications, Inc.,* 445 Pa. 384, 286 A.2d 357 (1971) *cert. denied* 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972). The *Matus* Court adopted as binding upon it the holding of the plurality opinion of the United States Supreme Court in *Rosenbloom v. Metromedia, Inc., supra,* which extended the *Sullivan* privilege to "all discussion and communication involving matters of public or general concern, without regard to whether the persons involved [were] famous or anonymous." *Rosenbloom v. Metromedia, Inc., supra* 403 U.S. at 44, 91 S.Ct. at 1820, 29 L.Ed.2d 296 (footnote omitted). Under the holding in *Rosenbloom,* a private figure defamation plaintiff could not recover actual damages caused by defamatory falsehoods concerning any matter of public interest absent a showing of "actual malice". *See Mathis v. Philadelphia Newspapers, Inc.,* 455 F.Supp. 406, 411 (E.D.Pa.1978). Three years later the Supreme Court in *Gertz v. Robert Welch, Inc., supra,* rejected the public interest test of *Rosenbloom* and held that "so long as they do not impose liability without fault, the states may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. at 347, 94 S.Ct. at 3010, 41 L.Ed.2d 789. The *Gertz* Court thus discarded the public interest test of *Rosenbloom* in favor of a public figure—private individual classification.

When our Supreme Court adopted the holding of *Rosenbloom* as binding upon it in *Matus v. Triangle Publications, Inc.,* Justice Pomeroy stated for the majority:[6]

On the preliminary question of extending the reach of *New York Times* to matters of public or general concern, there was no disagreement among the five members of the Supreme Court who wrote or joined in opinions in support of the judgment affirming the Court of Appeals.

6. Justice O'Brien and Justice Jones joined the opinion written by Justice Pomeroy. Chief Justice Bell and Justice Eagen concurred in the result and Justice Roberts dissented.

We therefore accept this modification of the law of defamation in Pennsylvania, and with it the corollary that *in such cases the reasonable care standard must give way* to the more stringent standard of knowing or reckless disregard of falsity. Specifically, we adopt as binding on us the holding of the plurality opinion in *Rosenbloom,* viz.:

> We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not. 403 U.S. 52, 91 S.Ct. 1824, 29 L.Ed.2d 316.

*Id.* 445 Pa. at 394, 286 A.2d at 363.

The Court in *Matus* went on to conclude, however, that the defamatory communication there at issue did not "by [any] stretch of imagination [touch upon] a matter of public concern...." *Id.,* 445 Pa. at 398, 286 A.2d at 365. The Court, therefore, held that *Rosenbloom*

> does not require in this case the application of the rule that the appellant's conditional privilege could be defeated only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not. On the facts before us, it was enough to defeat the privilege that the statement be shown by a preponderance of the evidence to have been uttered with 'want of reasonable care and diligence to ascertain the truth.' *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 179, 191 A.2d 662, 668 (1963).

*Matus v. Triangle Publications, Inc., supra* 445 Pa. at 398, 286 A.2d at 365.

Thus, the *Matus* Court concluded that even under the holding in *Rosenbloom* the conditional privilege which the defendant had asserted could be defeated by showing mere

negligence as the defamatory communication did not relate to a matter of public or general concern. *See also Baird v. Dun & Bradstreet*, 446 Pa. 266, 274, 285 A.2d 166, 171 (1971). *Matus* seems, further, to declare, quite unequivocally, that under Pennsylvania law, once the issue of conditional privilege is raised by a defendant who has been sued by a private figure for defamatory communications concerning matters which are *not* of public concern, the burden of proof of the plaintiff in order to establish abuse of the conditional privilege is "want of reasonable care and diligence to ascertain the truth" or more simply put, negligence. *Id.* 445 Pa. at 398, 286 A.2d at 365 *quoting Purcell v. Westinghouse Broadcasting Co., supra* 411 Pa. at 179, 191 A.2d at 668.

"[T]he individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.' " *Gertz v. Robert Welch, Inc., supra* 418 U.S. at 341, 94 S.Ct. at 3007, 41 L.Ed.2d 789 *quoting Rosenblatt v. Baer*, 383 U.S. 75, 92, 86 S.Ct. 669, 679, 15 L.Ed.2d 597 (1966) (concurring opinion by Mr. Justice Stewart). Consistency, as well as prudence, compels the view that the appropriate standard of proof, in defamation actions where the plaintiff is, as heretofore determined, a private figure, should be one of negligence. Such a conclusion is in harmony with *Gertz* and the views of our Supreme Court in *Matus.*

The majority of the federal court decisions which have applied Pennsylvania law upon this issue have concluded that a private figure defamation plaintiff, in light of the *Gertz* decision, may recover actual damages for publication of defamatory falsehoods upon a showing of mere negligence on the part of the publisher. *Bufalino v. Associated Press*, 692 F.2d 266, 273 (2d Cir.1982) *cert. denied* 462 U.S. 1111, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983) (applying Pennsylvania law); *Fitzpatrick v. Milky Way Productions, Inc.*, 537 F.Supp. 165 (E.D.Pa.1982); *Marcone v. Penthouse International, Ltd., supra* at 361; *Mathis v. Philadelphia*

*Newspapers, Inc., supra.* We agree with the analyses presented in those opinions and conclude that the Pennsylvania Supreme Court in light of the decision in *Gertz v. Robert Welch, Inc., supra,* would apply a negligence standard where the plaintiff is, as heretofore determined, a private figure. We share the view of Judge Pollak:

> To be sure, *Matus,* decided three years prior to *Gertz,* did not uphold the negligence standard as constitutionally necessary, or constitutionally sufficient, in private plaintiff/private subject matter cases. However, the *Matus* court clearly signalled its conviction that the standard applied by the trial court below represented a proper—indeed, a generous—accommodation, in such cases, of the interests of news media on the one hand and private figure plaintiffs on the other. Reconsideration of *Matus* in light of *Gertz* would presumably prompt recognition that strict liability is not a constitutionally permitted standard in private plaintiff-private subject matter cases, but there seems no reason why *Gertz* would lead the Pennsylvania Supreme Court to revise its conclusion that the 'reasonable care' standard adequately protects the interests of defendants in such cases.

*Fitzpatrick v. Milky Way Productions, Inc., supra* at 169 (footnotes omitted). *Accord Marcone v. Penthouse International, Ltd., supra* at 361.

▪ We hold that a private figure defamation plaintiff, seeking compensation for harm inflicted as a result of the publication of defamatory matter, must prove that the defamatory matter was published with "want of reasonable care and diligence to ascertain the truth" or, in the vernacular, with negligence.

▪ We need not presently consider whether there exists any other qualified privilege in the appellees to publish the defamatory matter. The only issue of privilege before this Court is the privilege under *Sullivan.* We note, however, that the burden is upon the defendant in the first instance to establish the existence of a privileged occasion. *Medico v. Time, Inc.,* 643 F.2d 134, 146 (3rd Cir.1981); *cert.*

*denied* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *McAndrew v. Scranton Republican Pub. Co.*, 364 Pa. 504, 515, 72 A.2d 780, 785 (1950); *Vitteck v. Washington Broadcasting Co., Inc., supra* 256 Pa.Super. at 434, 389 A.2d at 1201; 42 Pa.C.S. § 8343(b). Once the defendant has established the existence of a common law or qualified privilege, the burden shifts to the plaintiff to establish an abuse of privilege by the defendant in accordance with 42 Pa.C.S.A. § 8343(a)(7). *See Baird v. Dun & Bradstreet*, 446 Pa. 266, 285 A.2d 166 (1971); *Rankin v. Phillippe*, 206 Pa.Super. 27, 30, 211 A.2d 56, 58 (1965); *Vitteck v. Washington Broadcasting Co., Inc., supra* 256 Pa.Super. at 434, 389 A.2d at 1201.

We, therefore, reverse the entry of summary judgment in favor of appellees on the issue of the burden of proof of a private figure defamation plaintiff and remand for further proceedings consistent with this opinion.

The order of the trial court is affirmed in part and reversed in part and the case remanded for further proceedings, consistent with the foregoing. Jurisdiction is relinquished.

BECK, J., files a concurring and dissenting opinion.

APPENDIX A

# GLOBE–TIMES
March 18, 1977

### 14-Year Veteran
### Quits Police Job

A Bethlehem policeman with 14 years' service resigned today, citing "irreconcilable political differences" within the department.

Patrolman Ronald Rutt, 40, said the decision did not come easily, but that his frustration grew to the point where he could no longer continue on the job.

The resignation takes effect immediately.

He is a professional photographer and will now operate his 804 Linden St. studio full time.

Rutt gave his resignation to Baker Team Capt. John Yerk and Commissioner H. Robert Galle this morning.

Yerk said, "I was satisfied with his work. He had good potential. I don't know what I could have done to further his career. I hope he gave it a lot of thought. He has 14 years invested.

Although Rutt said in his letter he would not elaborate on the "politics in its broadest sense" he said forced his decision, he did bring out a few points in a personal visit to the Globe-Times office today.

He said discipline is not meted out equally in the department.

He cited frustration with small things—vacation schedules, rules and regulations, and the like.

Rutt said he was constantly frustrated with situations such as having his vacation disapproved, only to turn up for night shift where he became acting sergeant by default since the other men were on vacation.

"I was acting sergeant and everything else," Rutt said.

He said he also felt that his 93.4 average at the State Police Academy and two years study of criminal law should have benefited him.

However, after 14 years, he was still doing beat and cruiser patrol.

He also charged that team policing is not favored by all the men as claimed by the city administration, adding that there is insufficient manpower in the department to make it work efficiently.

"And, they are using investigators, (instead of detectives) which gives them no rank, and no money," Rutt said.

Rutt said that his employees could operate his studio, which does, color, black and white, silkscreening, advertising and other photography.

However, now he will take over.

"It is with deep regret that I leave behind so many years of pleasure and a feeling of well being that I have helped many citizens of the city and my brother officers."

BECK, Judge, concurring and dissenting:

I agree with the result reached in the comprehensive and excellent majority opinion.[1] The burden on the plaintiff in this case is limited to the proof of negligence, not actual malice. I reach this result, though, for different reasons from those relied on by the majority, and write to state my view that the analysis by the majority is not in conformity with the law as stated by the Pennsylvania Supreme Court in *Matus v. Triangle Publications*, 445 Pa. 384, 286 A.2d 357 (1971), *cert. denied*, 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972).

The majority departs from the analysis of our Supreme Court in *Matus v. Triangle Publications*. *Matus* adopted the approach of a plurality of the United States Supreme Court in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), under which a private plaintiff is required to prove malice ("knowing or reckless disregard of falsity") in a defamation action against a news media defendant if the alleged defamatory statement related to the plaintiff's "involvement in an event of public or general concern." *See Matus*, 445 Pa. at 395, 286 A.2d at 363. Instead, the majority favors an analysis under which the burden of proof turns simply on whether the plaintiff is a public or private figure.

Contrary to the majority, I do not believe that subsequent constitutional rulings of the United States Supreme Court and decisions of inferior federal courts interpreting Pennsylvania law direct us to abandon *Matus* and *Rosenbloom*

1. I also agree with the majority that the publication at issue is capable of defamatory meaning.

entirely. Therefore, I would reaffirm that *Matus* is still the law in Pennsylvania to the extent that it does not violate constitutional mandate. Applying the *Rosenbloom* test as *Matus* dictates, I would then hold that plaintiff/appellant is not required to prove malice, because the alleged defamatory statement in this case does not involve a matter of public or general concern.

My disagreement with the majority centers on the question of the implications of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), decided three years after *Matus.* In *Gertz,* the Supreme Court retreated from *Rosenbloom,* finding that the *Rosenbloom* plurality's approach was not required by the First Amendment. Rather, the *Gertz* Court held that the States were free to define for themselves the standard of liability in private-plaintiff defamation actions so long as they did not impose strict liability. *Gertz* therefore does invite the States to reexamine their libel laws within its framework.

The lack of any post-*Gertz* decisions on this issue by our Supreme Court means that Pennsylvania has not yet undertaken to reassess or revise the law as stated in *Matus.* I believe that in this situation we must assume that *Matus* is still good law to the extent that it does not offend the *constitutionally required* standards of *Gertz* and will remain good law until our Supreme Court decides to the contrary.

The holding of *Gertz* that the imposition of strict liability on the news media for defamation is constitutionally impermissible is an interpretation of the Constitution which is binding on the courts of this Commonwealth. *Commonwealth v. Ware,* 446 Pa. 52, 284 A.2d 700 (1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972). *Gertz* then delineates an area within which the States are free to act. Decisions within that area are therefore a matter of *state* libel law. Interpretations of state law by the federal courts, while persuasive,[2] do not carry the force of binding precedent. *Commonwealth v. Geschwendt,* 500

2. *But see infra* note 3.

Pa. 120, 454 A.2d 991 (1982); *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A.2d 199 (1962).

The majority cites several cases in which lower and intermediate federal courts concluded that if the Pennsylvania Supreme Court were to reexamine Pennsylvania law in light of *Gertz,* it would reject *Matus* as no longer good law and apply a negligence standard to all private-plaintiff libel actions whether or not the matter involved was of public or general concern.[3] Federal courts sitting in diversity cases have the luxury of deciding what a state's highest court *would* say in a given situation. We, on the other hand, are bound by what the Supreme Court of this Commonwealth *has* said, and it has said that *Rosenbloom* is the law in Pennsylvania. I do not find anything in *Gertz* which prohibits a State from applying a malice standard where *Rosenbloom* would require malice and applying a negligence standard in all other cases. Whether our Supreme Court wishes to overrule even this constitutionally permissible aspect of *Matus* is for the Supreme Court to decide. Until it so decides, we are constrained to adhere to its prior decisions.

I also recommend adherence to *Rosenbloom* because I believe it is a better statement of the law. We are presented in this case, as in all libel cases involving news reporting, with the difficult but unavoidable task of striking a delicate balance between the freedom of expression safeguarded by the First Amendment and the reputational and privacy interests of individuals. The Supreme Court has recognized that "[s]ome tension necessarily exists between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury." *Gertz, supra,* 418 U.S. at 342, 94 S.Ct. at 3008. In this context, choosing among standards of liability becomes a way of according varying amounts of protection against the possible chilling effect of libel laws on protected speech. Since we are called upon to

**3.** *Contra* to the cases cited by the majority is *Lorentz v. Westinghouse Elec. Corp.,* 472 F.Supp. 946 (W.D.Pa.1979). In *Lorentz,* the district court followed *Matus* but added a cautionary footnote stating that it was unclear whether *Matus* was still good law.

forge a careful accommodation between two highly important interests, we should articulate a closely tailored standard which provides the greatest amount of protection to the most highly valued speech.

It is my belief that the plurality in *Rosenbloom* stated such a rule. At the heart of the First Amendment is a "profound national commitment that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). The *Rosenbloom* standard best serves this interest by focusing our inquiry on whether the speech in question concerns the plaintiff's involvement in events of public or general interest, i.e., in public issues. A rule based solely on the characterization of plaintiff as a public or private figure does not adequately address this First Amendment concern. In the words of Justice Brennan, speaking for the *Rosenbloom* plurality:

> If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not "voluntarily" choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety.[1] ... We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous.

*Rosenbloom, supra,* 403 U.S. at 43–44, 91 S.Ct. at 1819–1820 (footnote omitted).

I also agree with Justice Brennan's view that the public figure/private figure distinction is overinclusive and underinclusive in its protection of both the First Amendment and the personal reputation interests. I am unable to improve

on Justice Brennan's excellent statement of this point in *Rosenbloom:*

> Voluntarily or not, we are all "public" men to some degree. Conversely, some aspects of the lives of even the most public men fall outside the area of matters of public or general concern. See n. 12, supra; *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Thus, the idea that certain "public" figures have voluntarily exposed their entire lives to public inspection, while private individuals have kept theirs carefully shrouded from public view is, at best, a legal fiction. In any event, such a distinction could easily produce the paradoxical result of dampening discussion of issues of public or general concern because they happen to involve private citizens while extending constitutional encouragement to discussion of aspects of the lives of "public figures" that are not in the area of public or general concern.

*Id.* at 48, 91 S.Ct. at 1822 (footnote omitted).

In *Gertz,* the Court took the laudable step of sharpening the public figure/private figure distinction by introducing the concept of a limited purpose public figure who becomes a public figure only "for a limited range of issues" (Majority at 80–81). However, Justice Brennan evidently felt that this redefinition of the public figure/private figure distinction did not adequately address the concerns he expressed in *Rosenbloom,* because he reiterated them in his dissenting opinion in *Gertz. See* 418 U.S. at 363–364, 94 S.Ct. at 3018–3019 (Brennan, J., dissenting).[4] I agree with Justice Brennan's views, and for these reasons I believe the *Rosenbloom* rule most effectively fosters free debate on public issues while offering the greatest protection against reputational injury caused by careless intrusions into the private aspects of one's life whether that person be a public or private individual.

**4.** Apparently Justice Brennan was correct. As the majority notes (at 80), in *Wolston v. Readers' Digest Association,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979), the Supreme Court held that involvement in an issue of public or general concern did not necessarily confer on that person the status of a limited public figure.

Applying *Rosenbloom* to the facts of the instant case, I would find that the obituary in question does not concern appellant's involvement in an event of public or general concern. Appellant's son was not in the public eye, so the circumstances surrounding his death are not generally a matter of public interest. Although the matter of suicide among young people may be a public concern, it does not follow that the particulars of any individual young person's suicide are a matter of public interest. Were this so, the details of every poor person's life would be a matter of public interest simply because poverty is a general public concern. From time to time appellant was involved in issues of public concern, such as the mayoral election and working conditions in the police department. This article does not concern itself with appellant's involvement in any of these issues. Therefore, being of the opinion that *Rosenbloom* would not require a malice standard to be applied here, I am in agreement with the majority's result in this appeal. The summary judgment entered in favor of appellees on the issue of plaintiff's burden of proof must be vacated and the case remanded for further proceedings in which a negligence standard applies.