**FRANKLIN PRESCRIPTIONS, INC., Plaintiff,**

v.

**THE NEW YORK TIMES COMPANY, Defendant.**

**Civil Action No. 01–145.**

United States District Court, E.D. Pennsylvania.

June 19, 2003.

Elizabeth K. Ainslie, Wendy Beetlestone, Jennifer Dufault James, Carl A. Solano, Schnader, Harrison, Segal & Lewis LLP, Philadelphia, PA, George Freeman, New York, NY, for Defendant.

George Bochetto, David P. Heim, Stephen E. Skovron, Bochetto & Lentz PC, Philadelphia, PA, for Plaintiff.

### MEMORANDUM

RUFE, District Judge.

This is a defamation case brought by Franklin Prescriptions, Incorporated, ("Franklin") against The New York Times Company ("The Times") premised upon injury to Franklin's reputation resulting from the publication of an article by The Times entitled *A Web Bazaar Turns Into a Pharmaceutical Free For All.* Presently before the Court is The Times' Motion for Certification of Interlocutory Appeal or, in the alternative, For Reconsideration of the Court's Denial of The Times' Summary Judgment Motion. For the reasons set forth below, The Times' Motion is denied in its entirety.

## I. *BACKGROUND*

Franklin has been in business for over thirty-years as a small, solely owned pharmacy located in Philadelphia, Pennsylvania. Franklin developed a niche market in the field of infertility drugs through reputation and patient referrals. Franklin does not engage in extensive advertising and neither purchases advertising space in newspapers nor purchases television commercial time. Franklin has spent a total of $1,000.00 on advertising in the past four years. The extent of Franklin's advertising budget is allocated to the maintenance of an information only Website on the Internet. Potential customers can view Franklin's offerings but cannot utilize this Website to order or to purchase prescription drugs online. In addition, potential customers viewing the Website do not have the ability to contact Franklin via e-mail and all prescription drug orders to Franklin must be made by post-mail, telephone, or telefax and only with a doctor's prescription.

The Times is a well known national newspaper that is published in New York. On October 25, 2000, The Times published an article entitled, *A Web Bazaar Turns Into a Pharmaceutical Free For All* (hereinafter "the Article"). The Article began with a description of the difficulties that a Yonkers, New York, mother had in obtaining expensive infertility medications and her use of the Internet to purchase the medication at a reasonable price. While the Article's initial paragraphs mention the significant benefits that the Internet can offer when searching for prescriptions, such as comparative price shopping, convenience and anonymity, the remainder of the Article deals with the serious health risks and dangers of buying "E-medicines." The Article described in detail "unscrupulous" and "cloak and dagger" Websites which take e-mail orders for con-

trolled pharmaceuticals-infertility drugs, in particular-without requiring a doctor's prescription. More specifically, the Article described "online pharmacies" as:

> unscrupulous online pharmacies, eager to grab a slice of a global pharmaceutical market that exceeds $200 billion, intentionally muddy the water by operating multiple sites from numerous places, all of which can be shut down at a moment's notice and moved elsewhere. The chaos created by these Web-based transactions, which can cross state and county borders, ensures that many investigations quickly become a jurisdictional nightmare.

The Article, col. 3–4, ¶ 1.

Although there was no specific reference to Franklin within the text of this Article, the Article did contain an edited version of Franklin's "web-grab."[1] The web-grab is juxtaposed with a side-bar labeled "Safety Tips for Buying E–Medicines," where the Article's author warns readers to "[a]void sites that fail or refuse to provide a United States address and phone number." The web-grab as seen in the Article has been edited to delete Franklin's address and telephone number. Moreover, the Article did state that "traditional brick-and-mortar drugstores," such as "CVS, Drug Emporium and Walgreens for example," do not operate outside the law, but the Article failed to list Franklin as a lawful pharmacy while using Franklin's web-grab as an illustration of unlawful practices.

On October 25, 2000, Franklin's owner, Ronald Cohen ("Cohen"), became aware of the Article after he received a call from a personal friend. Cohen reviewed the Article and then contacted The Times to complain that the cropped picture of Franklin's Web-site in the Article falsely portrays Franklin as selling prescription drugs over the Internet. The Times did issue a correction on October 30, 2000 on the second page of the newspaper (page A2) in a special location devoted to corrections of prior articles. The correction stated:

> [a] picture of a Website in the special E-commerce section on Wednesday, with an article about buying medicine over the Internet, was published in error. The site, for the Franklin Drug Center in Philadelphia, lists prices. Prescriptions must be faxed or mailed to the company which arranges payment off line. The company does not sell drugs online.

*See* Defendant's Exhibit B.

Thereafter, Franklin filed the instant action for defamation and false light. This Court denied The Times' Motion for Summary Judgment[2] in a previous Order dated February 12, 2003 and made the following findings: (1) the law of Pennsylvania shall apply to this matter, (2) the Article as published by The Times is capable of a defamatory meaning; (3) the Article and illustration applies to Franklin; and (4) Franklin is a private figure and not a

---

**1.** A "web-grab" is a term used for a printout of a Website for publication in a newspaper as a photograph. Upon reviewing the submissions of the parties and the accompanying exhibits, it is apparent that The Times' normal practice is to provide web page pictures to illustrate articles that appear in the Times. This process involves several steps. First, a photo editor reviews the draft of the soon to be published article. Second, the photo editor researches the Web, searching for web-

grabs that would be suitable for illustrating the article to be published. Finally, the art director reviews the pictures and chooses the one considered to be the most suitable to illustrate the article.

**2.** The Court did grant The Times Unopposed Motion for Summary Judgment relating to the claims against Susan Coburn, the author of the Article.

limited purpose public figure. The Times thereafter filed the instant motion for Certification of Interlocutory Appeal or, in the alternative, Reconsideration of the Times' Motion for Summary Judgment. The Court will first address The Times' Motion for Reconsideration.

## II. *THE TIMES' SUMMARY JUDGMENT MOTION*

 The Times previously moved this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all remaining claims against them.[3] "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Moll v. Northern Telecom, Inc.*, No. Civ. A.94–5451, 1996 WL 11355, at *2 (E.D.Pa. Jan.3, 1996). In reconsidering an earlier summary judgment motion, the same summary judgment standard applies. *Travelers Idem. Co. v. Fantozzi*, 825 F.Supp. 80, 83 (E.D.Pa.1993).

This Court will enter summary judgment in a libel and defamation action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 n. 7, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining the "general reluctance to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws"). A fact is material if it might affect the outcome of the case under the governing substantive law. *See*

*id.* at 248, 106 S.Ct. 2505. In order for there to be "a genuine issue of material fact," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* The court determines whether there is a sufficient factual disagreement or whether "it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. Although the non-moving party has the burden of producing evidence to establish each element of its claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), this Court must view the evidence, and draw all reasonable inferences, in the light most favorable to Franklin, the non-moving party. *See Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir.1996).

### A. *CHOICE OF LAW*

 The Times contends that New York law should apply to this controversy because New York is its principal place of business and is also the headquarters for the publication of the Article in question. On the other hand, Franklin argues that the law of Pennsylvania should apply because its principal place of business is in Pennsylvania and it is the place where they suffered the greatest injury to their reputation. A valid claim exists for applying either of the two states' substantive law and, therefore, the Court must balance the interests of both New York and Pennsylvania.

 It is axiomatic that the conflict of law rules of the forum state apply when a federal court exercises diversity jurisdiction. *Wilson v. Slatalla*, 970 F.Supp. 405, 413 (E.D.Pa.1997) (explaining *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61

---

3. The Honorable Ronald L. Buckwalter dismissed Franklin's false light cause of action in a previous Memorandum and Order, dated August 16, 2001. This case was reassigned to this judge pursuant to Eastern District of Pennsylvania procedures for random reassignment of cases on June 14, 2002.

S.Ct. 1020, 85 L.Ed. 1477 (1941)). Under Pennsylvania choice of law rules the Court looks to the following: 1) whether the laws of the states with an interest, here Pennsylvania and New York, conflict; and 2) if a conflict exists, which state has the "most significant contacts or relationships with a particular issue." *Id.*

In the instant matter, the law of Pennsylvania and New York differ on the appropriate standard of fault to apply to a private figure in a defamation case.[4] New York law requires a private figure to show that the media defendant acted in a grossly irresponsible manner regarding its statements about a legitimate public concern. *Id.* (explaining *Chapadeau v. Utica Observer–Dispatch,* 38 N.Y.2d 196, 379 N.Y.S.2d 61, 64, 341 N.E.2d 569, 571 (1975)). Conversely, Pennsylvania law requires a private figure to show mere negligence. *Buckley v. McGraw–Hill, Inc.,* 782 F.Supp. 1042, 1046 (W.D.Pa.1991) (relying on *Rutt v. Bethlehems' Globe Publ'g Co.,* 335 Pa.Super. 163, 484 A.2d 72, 83 (1984)). Thus, a true conflict of laws exists and this Court must apply the law of the state with the greatest interest.

The interest in reputation has been described as a "valuable asset in one's business or profession." *Fitzpatrick v. Milky Way Prods., Inc.,* 537 F.Supp. 165, 171 (E.D.Pa.1982). Therefore, it does not strain logic that "the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by the defamatory publication." *Id.; see also Osby v. A & E Tel. Networks,*

No. Civ.A.96–7347, 1997 WL 338855, at *3 (E.D.Pa. June 17, 1997) (explaining that the state where a plaintiff is domiciled is generally the state with a greater interest). Moreover, when a person claims that the defamation occurred by an aggregate communication, *i.e.* across multiple states, "the state of most significant relationship will usually be the state where the person was domiciled at the time. . . ." Restatement (Second) Conflict of Laws § 150(2) (1971); *Osby,* 1997 WL 338855, at *3.

Pennsylvania does indeed have an interest in Franklin's claim because its professional reputation and business contacts are based in that state. Although New York has an interest in protecting its media defendants and providing an environment for the free exchange of ideas, Pennsylvania's interest in protecting its citizens from harm to their proprietary interests resulting from a defamatory publication, in addition to providing compensation for such injury, outweighs New York's interest on this issue. *See Fitzpatrick,* 537 F.Supp. at 171–72 (holding that Pennsylvania's interest in compensating victim of defamation outweighed New York's interests in protecting free discussion and financial injury to defendant); *Wilson,* 970 F.Supp. at 414 (holding that "the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by defamatory publication"); *cf. Buckley,* 782 F.Supp. at 1042 (refusing to apply Pennsylvania law when plaintiff did not reside in Pennsylvania at the time of the publication). Thus, given that Franklin's principal place of business is in Pennsylva-

---

4. As explained below, the Court finds that Franklin is a private figure as opposed to a public figure. *See infra* at II.C. It should be noted that if Franklin were a limited purpose public figure, a conflict of law analysis would be unnecessary as Franklin would be required to overcome the hurdles of the "actual mal-

ice" standard as set forth in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (explaining that a public figure plaintiff must prove, by clear and convincing evidence, that the defendant published false material, knowing of its falsity or with reckless disregard for the truth).

nia, the Court is of the opinion that Pennsylvania has the most significant relationship with this dispute and will therefore apply Pennsylvania law to the remaining issues.

Furthermore, even if the Court was persuaded to find that New York has the most significant relationship to the instant matter, Franklin's claims would still survive summary judgment. New York law would require Franklin to establish by a preponderance of the evidence that The Times acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1031 (2d Cir.1997) (relying on *Chapadeau*, 38 N.Y.S.2d at 199, 379 N.Y.S.2d 61, 341 N.E.2d 569). In determining whether The Times acted in a grossly irresponsible manner under New York law, the Court considers:

> Whether it (1) followed 'sound journalistic practices' in preparing the allegedly defamatory article; (2) followed 'normal procedures,' including editorial review of the copy; (3) had any reason to doubt the accuracy of the source relied upon and thus a duty to make further inquiry to verify the information; and (4) could easily verify the truth.

*Id.* at 1032.

In *D'Agrosa v. Newsday, Inc.*, 158 A.D.2d 229, 558 N.Y.S.2d 961 (2d Dept. 1990), the New York Appellate Division was confronted with the appropriate standard to be applied to a media defendant's liability for the publication of an alleged defamatory statement concerning a private individual after Newsday misidentified a dentist as a subject of a large malpractice award in a newspaper article. The dentist commenced an action for libel, alleging that Newsday published the article without taking the proper steps to ascertain the accuracy of the information. Newsday moved for summary judgment and stressed the fact that the misidentification was unintentional and not made with ill-will or malice. *Id.* at 233, 558 N.Y.S.2d at 964. The court held that a triable issue of fact remained as to whether the reporter acted in a grossly irresponsible manner when he made an honest mistake of misidentifying the dentist. The court reasoned that the mistake could have been avoided if the reporter referred to the documents that were already in the reporter's possession. Thus, even though the misidentification was apparently not intentional, and was the result of the editor's haste in making deadline, the case presented a clear dispute as to whether the practices of Newsday were grossly irresponsible. *Id.* at 235, 558 N.Y.S.2d at 965.

Here, The Times omitted information from Franklin's web-grab that would have made clear that Franklin does not engage in the online sales of pharmaceuticals. Whether the cropped illustration of Franklin's web-grab was made in haste or made deliberately is of no issue here. As in *D'Agrosa*, The Times could have prevented the defamatory implication by utilizing the information that it already had in its possession, *i.e.*, consulting the full scope of Franklin's Website. The Times' production artist, Mr. Payadue admitted that he reviewed the article before searching for an illustration and subsequently viewed Franklin's Website, which states with clarity that Franklin does not operate an online pharmacy and that all orders must be accompanied by a doctor's prescription. *See* Deposition of Marcus Payadue at 11–12. Whether the procedures utilized by The Times breached the standards of news gathering and rise to a level of gross irresponsibility is a question of fact. Thus, summary judgment is not appropriate under either New York or Pennsylvania law.

## B. *STATE LAW ANALYSIS*

■ A defamation case involves "two separate sorts of inquiries: first, is there an infringement of a state protected right to be free from a tortious invasion of one's reputation?; and second, even if there is, does the First Amendment nonetheless preclude recovery?" *Pierce v. Capital Cities Commun.*, 576 F.2d 495, 502 n. 19 (3d Cir.1978). Initially, the court considers the governing tort law to determine whether a state tort has arisen in the first instance. *Id.* at 501.

■ Under Pennsylvania law, Franklin must prove seven elements in a defamation action. They are:

> (1) the defamatory nature of the communication; (2) publication by the defendant; (3) the application of the communication to the plaintiff; (4) a recipient's understanding of the communication's defamatory meaning; (5) a recipient's understanding that the communication was intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

*Fanelle v. Lojack Corp.*, No. Civ.A.99–4292, 2000 WL 1801270, at *2 (E.D.Pa. Dec.7, 2000) (explaining 42 Pa. Cons.Stat. Ann. § 8343(a)). The Times contends that Franklin cannot establish the defamatory nature of the communication and the application of the communication to Franklin.

### 1. *Capable of a Defamatory Meaning*

■ As an initial matter, the Court determines whether the communication by The Times is capable of a defamatory meaning. *Osby*, 1997 WL 338855, at *4. "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Maier v. Maretti*, 448 Pa.Super. 276, 283, 671 A.2d 701, 704 (1995). The test to determine whether the communication is defamatory takes into consideration "the effect the communication is fairly calculated to produce, the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate." *Osby*, 1997 WL 338855, at *4. (*quoting Baker v. Lafayette Coll.*, 516 Pa. 291, 532 A.2d 399, 402 (1987)). Moreover, where "there is a innocent interpretation and an alternative defamatory interpretation, the issue must proceed to the jury." *Tucker v. Merek & Co., Inc.*, No. Civ.A.02–2421, 2002 WL 31689256, at *4 (E.D.Pa. Dec.2, 2002) (analyzing *Maier v. Maretti*, 448 Pa.Super. 276, 671 A.2d 701 (1995)).

Here, the Article describes in great detail the dangers of on-line drug purchases without a prescription. The Article details "serious health risks" associated with purchasing pharmaceuticals online in addition to the problems that the government has had in regulating online pharmacies. The Article states that "[n]ot all online pharmacies operate outside the law." However, the Article proceeds to describe such pharmacies as "traditional brick and mortar drugstores" such as "CVS, Drug Emporium and Walgreens." Even though Franklin is a traditional single location pharmacy that does not fill prescriptions online, the Article fails to list Franklin as a "traditional brick and mortar drugstore." A reasonable person reading the Article may determine that Franklin is the specific type of online pharmacy that "operates outside the law." While it is true that the Article initially discusses the benefits of purchasing online pharmaceuticals (*i.e.,* how it has helped parents afford infertility drugs), the main focus of the Article details the negative effects of such online pharmaceutical sales. Notwithstanding the innocent interpretation ascribed to the Article by The Times, an alternative defamatory meaning

exists. Therefore, the article is capable of a defamatory meaning and the issue should proceed to a jury.

### 2. *The Article Concerns Franklin*

■ The instant matter does not involve a garden variety defamation claim involving a publication that specifically names Franklin. This is a case of defamation by implication.[5] The Pennsylvania Superior Court "has held that the literal accuracy of separate statements will not render a communication true where ... the implication of the communication as a whole was false." *Fanelle*, 2000 WL 1801270, at *2 (quoting *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 493, 448 A.2d 6 (1982) (internal quotes omitted)). Moreover, "[i]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or otherwise creates a defamatory implication ... he may be held responsible for the defamatory implication. . . ." *Id.* (quoting Prosser, *The Law of Torts*, § 116 (5th ed., Supp.1988)).

Here, the Court is of the opinion that an ordinary reader of the Article could naturally and reasonably infer that the defamatory publication referred to Franklin. The Article describes the dangerous, illicit, unregulated, "unscrupulous" and "cloak and dagger" Web sites which sell pharmaceuticals at prices below market value without requiring a doctor's prescription. The juxtaposition of Franklin's edited "web grab,"

without Franklin's explanatory information of how to order pharmaceuticals with a valid doctor's prescription, in combination with the content of the article itself, could lead a reasonable person to believe that Franklin engages in the exact type of conduct described in the Article. Yet, other evidence suggests that Franklin is the precise exception to the online pharmacies negatively described in the Article. The record shows that Franklin limits its online advertising and complies with all applicable state laws. In particular, Franklin requires a doctor's prescription for all orders. Therefore, the Court finds that the Article concerns Franklin and turns to an analysis of the First Amendment to determine if recovery is precluded in this case.

### C. *FIRST AMENDMENT LIMITATIONS*

Having found a potential infringement of a state protected right to be free from tortious invasion of one's reputation, the Court now turns to the safeguards of the First Amendment to determine whether defendant's free speech rights preclude recovery in this case. Thus, the competing interests of The Times' right of free press and Franklin's right to be free from harm to its proprietary interests resulting from defamatory publications are currently before the Court.

---

**5.** The Times urges this Court to adopt the holdings of *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C.Cir.1990), and later decisions, that require a plaintiff to prove that the defendant endorsed the defamatory implication. The cases cited by The Times are each inapplicable. Because the Court finds that the law of Pennsylvania governs this case, and the Court has determined that Franklin is a private figure, the negligence standard as adopted by the Pennsylvania Courts will control. *See Rutt*, 335 Pa.Super. at 185–86, 484

A.2d 72 (holding that "a private figure defamation plaintiff, seeking compensation for harm inflicted as a result of the publication of defamatory matter, must prove that the defamatory matter was published with want of reasonable care and diligence to ascertain the truth, or in the vernacular, with negligence"); *Wilson*, 970 F.Supp. at 415–417 (holding private plaintiff to a negligence standard of fault where the implication from an article was capable of a defamatory meaning).

■ The Supreme Court of the United States "has focused on the private or public status of the plaintiff as the determinative factor in striking the proper balance between individual reputation, freedom of the press, and robust public debate." *Marcone v. Penthouse Int'l,* 754 F.2d 1072 (3d Cir.1985). In *New York Times v. Sullivan,* the Supreme Court imposed limitations on state defamation laws by requiring a public figure plaintiff to prove, by clear and convincing evidence, that the defendant published false material, knowing of its falsity or with reckless disregard for the truth (actual malice). 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). However, if the plaintiff is a private figure, the First Amendment only forbids a state to impose liability without fault. Thus, a plaintiff is required to at least show negligence on the part of defendant in order to succeed on the merits of his/her case. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

The Times argues that Franklin is a public figure and as such is required to show that The Times published the Article with actual malice. Conversely, Franklin argues that it is a private figure and therefore is only required to establish common law negligence.

■ Whether Franklin is a public or private figure is a question of law to be determined by this Court. *Marcone,* 754 F.2d at 1082. As a general rule, those who attain public figure status have either assumed roles of special prominence in society or placed themselves in the forefront of a particular issue. *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 273 (3d Cir. 1980). It is "exceedingly" rare that one is considered a public figure when they have exercised no purposeful action on their part. *Id.* Thus, "public figures effectively have assumed the risk of potential unfair criticism by entering into the public arena and engaging the public's attention." *Id.* This public versus private distinction is considered a fair balance since public figures can avail themselves more readily of effective channels of communication to rebut the communication asserted. *Marcone,* 754 F.2d at 1081.

■ The issue here is whether Franklin is a limited purpose public figure, *i.e.,* whether it may be deemed a public figure in the context of the public controversy of online pharmacies. The Third Circuit has set forth a two-part inquiry to determine whether a plaintiff is a limited purpose public figure. First, a court must determine whether the alleged defamatory communication involves a public controversy. *McDowell v. Paiewonsky,* 769 F.2d 942, 948 (3d Cir.1985). And second, a court must inquire into the nature and extent of plaintiff's involvement within that controversy. *Id.*

The Times argues that Franklin, by advertising over the Internet, places itself in the controversy surrounding the Internet's ability to make drugs, particularly expensive fertility medications, more readily available and affordable. Thus, by depicting the public debate at issue here as the Internet's ability to make drugs more readily available and affordable, The Times attempts to create a post hoc controversy in an effort to draw this Court's attention away from the actual substance of the Article and the true controversy sparking the debate in the first place, *i.e.,* unscrupulous online pharmacies and the dangers of buying pharmaceuticals online. *See Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 591 (1st Cir.1980) ("*Gertz's* requirement that in order for individuals ... to merit public figure status, they must have thrust themselves to the forefront of particular public controversies would seem to imply a pre-existing controversy.... Those charged with defa-

mation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

Even a plain reading of the Article illustrates that the pre-existing controversy, and the central focus of the Article, deals with the dangers of purchasing pharmaceuticals over the Internet and the cautionary steps that buyers need to take when ordering and receiving online prescriptions. One look at the title of the Article, *A Web Bazaar Turns Into a Pharmaceutical Free-for-All*, reinforces this notion. Nevertheless, even assuming that the focus of the public debate is the Internet's ability to make drugs more readily available and affordable, as The Times contends, the Court today finds that a pharmacy that uses the Internet for information purposes only, and does not sell or take orders over the Internet, is not an "online" pharmacy contributing to such a debate. If, however, Franklin did take orders over the Internet, The Times' argument that Franklin makes pharmaceuticals more readily available would be an easier pill to swallow. This is not the case and Franklin cannot be deemed an online pharmacy any more than Walt Disney World's Internet advertisements on its Website make it an "online" amusement park.

The Times also argues that the Third Circuit's holding in *Steaks Unlimited, Inc.* ("*Steaks*"), that a meat advertiser became a public figure because of its advertisements, is analogous to the case at bar. 623 F.2d at 264. The Court is mindful that *Steaks* is the leading opinion in the nation on this question but finds the facts of this case wholly distinguishable to the facts in *Steaks*. Steaks, an Ohio based corporation, engaged in a widespread advertising campaign in order to promote its sales of meat products. The corporation engaged in a $16,000.00 advertising "blitz" and utilized newspaper, radio, large signs erected at sales locations and distribution of handbills. *Id.* at 273. The controversy at issue was whether Steaks' advertisement might be misleading, deceptive and in violation of local laws because it did not disclose the USDA grade or the price per pound of the beef. *Id.* at 274. The court held that Steaks thrust itself into the forefront of the Pittsburgh area and found that it was a public figure for the purpose of the controversy giving rise to that litigation. *Id.*

Here, Franklin did not place itself in any controversy and is certainly not at the center of the controversy, as was the case in *Steaks*. Franklin is a neutral party playing no part in the controversy of "online" pharmacies as it only posted a Website for information similar to an advertisement in a telephone directory. Beyond this, Franklin did not engage in any advertising blitz, a factor persuading the Third Circuit in *Steaks* to find public figure status.[6]

Therefore, the Court finds that Franklin is not at all involved in the controversy of online pharmacies making expensive drugs more accessible. Franklin's limited involvement with the Internet is too remote and tenuous to consider it a public figure. Accordingly, it need not make the more stringent showing of actual malice.[7]

---

**6.** As noted above, Franklin's combined advertising budget for the past four years was a mere $1,000.

**7.** Although a showing of actual malice is not needed to prove compensatory damages, Franklin will indeed need to show actual malice to receive punitive damages in this case.

*Walker v. Grand Cent. Sanitation*, 430 Pa.Super. 236, 634 A.2d 237, 243 (1993) (explaining *Gertz*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

**438**

Nevertheless, even if the Court were to find that Franklin is a limited purpose public figure, summary judgment would not be appropriate on the instant facts.

As explained herein, a limited purpose public figure is required to prove, by clear and convincing evidence, that the defendant published false material with actual malice. *Sullivan*, 376 U.S. at 254, 84 S.Ct. 710. Actual malice in this context is defined as publishing material knowing of its falsehood or with reckless disregard for the truth. *Id.* Given that it will be a rare circumstance that a plaintiff will be successful in proving awareness of falsehood from the mouth of the defendant, "objective circumstantial evidence can suffice to demonstrate actual malice." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089–90 (3d Cir.1988). Hence, a defendant cannot escape liability by testifying that he published the article with a belief that the statements were true. *Id.* "[M]ere evidence that a media defendant did not investigate properly does not rise to the level of actual malice." *Id.* However, "where the defendant finds internal inconsistencies or apparently reliable information that contradicts its libelous assertions, but nevertheless publishes those statements anyway, the *New York Times* actual malice test can be met." *Id.* at 1090.

Thus, if the Court were to find that Franklin is a limited purpose public figure, Franklin would be required to show that The Times published the Article and positioned Franklin's web-grab with knowledge that the implication was false or with "reckless disregard of whether it was false or not." *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 755, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). The Court finds today that Franklin has met its burden on the instant summary judgment. A genuine issue of material fact remains as to

whether The Times published the article with reckless disregard for its falsity. The Times' production artist, Mr. Payadue, did review the article before searching for an illustration. *See* Deposition of Marcus Payadue at 11–12. The first line of the draft outline stated that "a growing number of patients are turning to the Internet to purchase their medications from unlicensed sellers that include foreign companies and individuals selling their leftover medications." *See* Plaintiff's opposition to Defendant's Motion for Summary Judgment, Exhibit I. In his deposition, Mr. Payadue also admitted to having viewed Franklin's Website, which states with clarity that Franklin does not operate an online pharmacy and that all orders must be accompanied by a doctor's prescription. *See* Deposition of Marcus Payadue at 11–12. Hence, Mr. Payadue, having viewed Franklin's Website, had reliable information that contradicted the alleged defamatory implication. Franklin's edited web-grab was nevertheless submitted for illustration of the Article. Thereafter, Bernadette Dashiell, an art director at The Times, and John O'Neil, the editor in charge of the Article, reviewed Franklin's web-grab before choosing it for the illustration of the Article. Interestingly, even after several editors reviewed the web-grab, they omitted from the illustration in the Article the very section which explained that Franklin's orders must be accompanied by a doctor's prescription and could only be ordered from Franklin offline. Based on these facts, Franklin has raised a triable issue of fact as to whether The Times acted with actual malice and summary judgment must be denied. *See Van Englen v. Broadcast News Networks, Inc.*, 1997 WL 406267, at *5 (D.N.J. Jan.30, 1997) (explaining that "[i]ssues of state of mind, such as the determination whether a defendant acted with actual

malice, do not readily lend themselves to summary disposition").

Accordingly, because the Court finds that no manifest errors of law or newly discovered evidence exists, The Times' Motion for Reconsideration is denied.

### III. *INTERLOCUTORY APPEAL*

The Court now turns to The Times' Motion for Certification of Interlocutory Appeal. The Times contends that immediate interlocutory appeal is warranted in this case because the Court's Order denying summary judgment involves controlling questions of law as to which there are substantial grounds for difference of opinion, and which would end this litigation if decided in favor of The Times. The Times seeks to certify the following issues: (1) whether Franklin is a public figure with respect to a newspaper article discussing marketing drugs on the Internet; (2) whether Franklin's defamation action against The Times for harm to its reputation is governed by the law of New York, where the newspaper is published; and (3) whether Franklin is required to show that The Times intended or endorsed the defamatory implication under the defamation laws of Pennsylvania.

Under the Interlocutory Appeals Act, 28 U.S.C. § 1292(b), a district court has the discretion to grant a section 1292(b) certificate if the Order "(1) involve[s] a controlling question of law, (2) offer[s] substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately [would] materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.1974) (interpreting 28 U.S.C. § 1292(b)). The underlying purpose of interim appeal is to avoid a wasted trial. *Id.* at 755. Yet, the Court must carefully consider the appropriateness of certifying an order for interlocutory appeal. The Third Circuit has stated:

It is quite apparent from the legislative history of the Act ... that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.

*Milbert v. Bison Lab., Inc.*, 260 F.2d 431, 433 (3d Cir.1958); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (explaining that appellate review should be restricted to final decisions as it prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is in actuality a single controversy). Guided by these principles, the Court will now address the issues presented by The Times.

### A. *PUBLIC VERSUS PRIVATE FIGURE*

■ The Court previously denied the Times' Motion for Summary Judgment and found, *inter alia*, that Franklin is a private figure because Franklin did not assume a role of special prominence in society nor did it place itself in the forefront of the issue relating to the availability of prescription drugs online. In the instant motion for interim relief, The Times contends that Franklin, as a product seller, should be deemed a public figure for purposes of the "controversy" pertaining to the pricing and availability of fertility drugs via the Internet as discussed in The Times Article.[8] The Times argues that there are

---

**8.** For purposes of this motion, the Court has broadly interpreted the subject matter of The

Times Article to demonstrate that even The Times' interpretation of the Article does not

substantial grounds for a difference of opinions as to whether Franklin is a public or private figure. In support, The Times brings to light the Third Circuit holding in *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 273–74 (3d Cir.1980). However, as discussed above, the facts in *Steaks* are easily distinguished from the facts here. In *Steaks,* a corporation engaged in a costly, widespread advertising campaign (Steaks spent $16,000 in one year) to promote its sales of meat products and thus "injected itself into a matter of public interest ... for the purpose of influencing the consuming public ... [and] through its advertising blitz, ... invited public attention, comment, and criticism." *Steaks* 623 F.2d at 274. Conversely, Franklin did not inject itself into any controversy. Franklin merely provided an information only Website on the Internet and did not invite public attention, comment or criticism regarding the controversy of making drugs available via the Internet. Again, Franklin does not take or fill prescription orders online and does not allow for communication between the pharmacy and Internet users, requirements that the Court finds necessary for the pharmacy to be classified as "online."

Furthermore, the district court in *Steaks* found, and the Third Circuit agreed, that Steaks created the public controversy at issue in that case for the purpose of influencing the consuming public. To the contrary, Franklin did not attempt to influence online purchasers to buy prescriptions online. Interestingly, Franklin advertised to influence purchasers to do just the opposite, to contact Franklin offline and order their prescriptions with a valid doctor's prescription.

Therefore, The Times has failed to demonstrate to the Court that it should exercise discretion to grant an interlocutory appeal.

### B. CHOICE OF LAW

In denying The Times' Motion for Summary Judgment, the Court found that Pennsylvania law applies to this matter. The Times now argues that there are substantial grounds for a difference of opinion as to whether Pennsylvania or New York law is applicable to this case and requests a Certification of the Court's February 12, 2003 Order so that they may additionally appeal on this ground.

The Times supports its claim that courts have applied the law of the state of publication in cases of multistate defamation with the following two cases. The Times first presents a Third Circuit case in which the court held that the law of the place of defendant's conduct, not the place of the plaintiff's residence or harm should control. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 264–68 (3d Cir.2000). In *BP Chems. Ltd.,* the plaintiff, a British corporation, alleged that the defendants, a Taiwanese corporation and a Pennsylvania corporation with its principal place of business in New Jersey, misappropriated trade secrets relating to its methanol carbonylation process for making acetic acid by copying elements of an acetic acid plant design that plaintiff's predecessor had previously provided to a licensee. *Id.* at 257. The district court determined that New Jersey was the state with the most significant relationship with the case and applied New Jersey law to the issues. *Id.* at 264. The Third Circuit reversed and held that Taiwan had the

---

heighten Franklin to public figure status. In noting the Article's subject matters of drug pricing and availability of prescription drugs via the Internet, the Court finds that Franklin does not make prescription drugs available online and therefore, is not a public figure for this controversy.

greatest interests, the place where defendant Formosa Chemical & Fibre Corporation's injury-causing conduct occurred. The court stressed that the misappropriation of trade secrets "implicates policy judgments regarding the appropriate balance between protecting trade secrets, and free interchange and access to information, which also has profound implications for the health of the Taiwanese economy."[9] *Id.* at 265–66. Moreover, the Court concluded that plaintiff, BP Chemical, was not a resident of New Jersey and only suffered marginal injury in New Jersey. *Id.* Thus, because the court in *BP Chemicals* was confronted with a trade secret issue and a different set of public policies, it is not controlling in the instant defamation action.

The Times also directs the Court to *Buckley v. McGraw–Hill, Inc.,* where the court declined to apply the law of Pennsylvania and applied the law of New York, the place of publication. 782 F.Supp. 1042 (W.D.Pa.1991). The court in *Buckley,* however, recognized that Pennsylvania's interest in that matter was diminished because the plaintiff did not reside in Pennsylvania at the time of the alleged defamatory publication. In addition, the court took note that the plaintiff in *Buckley* stipulated that New York law would apply. Here, Franklin's principal place of business is in Pennsylvania and there is no evidence of any stipulated choice of law. Therefore, the Court finds that *Buckley* is distinguishable from the facts of this case and concludes that there are no grounds for a difference of opinion as to which law to apply to this defamation case.

In the instant matter, the Court is confronted with a defamation action and all applicable Pennsylvania cases concerning

this issue have applied the law of the state of plaintiff's residence because the underlying policy, that Pennsylvania has a significant interest in compensating victims of defamation, outweighs New York's interests in protecting free discussion and financial injury to the defendant. *Fitzpatrick,* 537 F.Supp. at 171–72; *Wilson,* 970 F.Supp. at 414 (explaining that "the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by defamatory publication"). Accordingly, The Times' Motion for Certification as it relates to the choice of law issue is denied.

## C. *INTENT & ENDORSEMENT*

The Times next argues that the "trend in the case law" is to require plaintiffs who claim they were libeled by a defamatory implication to prove that the implication was intended and endorsed by defendant. The Times, however, provides no Pennsylvania case law to support this argument.

As described in greater detail above, Pennsylvania cases recognize defamation by implication and have applied the negligence standard of liability in those cases. *See e.g. Rutt,* 335 Pa.Super. at 185–86, 484 A.2d 72 (explaining that a private figure plaintiff needs only to prove negligence); *Wilson,* 970 F.Supp. at 416–17 (private plaintiff held to a negligence standard where implication of the article was capable of defamatory meaning). The Court sees no indication within the Pennsylvania courts that they will now require a plaintiff to prove that the implication was intended and endorsed by defendant. Therefore, upon review of Pennsylvania law on this matter, the Court finds that a difference of

---

9. The Third Circuit also noted that "choice of law doctrine ordinarily does not give great weight to the place of injury in cases, like the case at bar, arising out of claims of misappropriation of trade values."

opinion does not exist that would require plaintiff to show intent and endorsement on the part of The Times in a defamation by implication case.

An appropriate Order follows.

## *ORDER*

**AND NOW,** this 19th day of June, 2003, upon consideration of the Motion by New York Times Company for Certification of Interlocutory Appeal, or In the Alternative, for Reconsideration of the Court's Order [doc. no. 38], and Plaintiff Franklin Prescription's response thereto [doc. no. 39], including the memoranda of law submitted by the parties, and for the reasons set forth in the attached memorandum, **IT IS HEREBY ORDERED AND DECREED** that the Motion is **DENIED** in its entirety.